BARBER ASPHALT PAVING COMPANY, Appellant, v. BESSIE M. MESERVEY et vir, Respondents.

Kansas City Court of Appeals, November 23, 1903.

1. **TAXBILLS: Kansas City Charter: Limitation of Lien.** Under the Kansas City charter, though the default in the payment of principal or interest of an installment of a taxbill which is due authorizes the collection of all the unpaid installments, it does not have the effect to set the statute of limitations to running against the lien of such taxbill, and the limitation only runs from the maturity of the last installment. (Broaddus and Ellison, JJ., concurring in separate opinions.)

2. ————: ————: **Construction.** The general understanding and constant practice for a long period without question is persuasive evidence of the true meaning of a law, and the maxim, *optimus interpres legum conseutudo*, is applied.

Appeal from Jackson Circuit Court. — *Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*Scarritt, Griffith & Jones* for appellant.

(1) It is well in undertaking to interpret any statute to have. in mind the legislation preceding the enactment of the law and the conditions which brough it about. Miller v. Gordon (1902), 70 S. W. 269.   (2)  Principles of interpretation, the intent.  St. Louis v. Lane, 110 Mo. 254; State v. Bennett, 102 Mo. 371; State ex rel. v. Heman, 70 Mo. 451.   (3)   Laws are to be construed so as to avoid absurdities.  In State v. Marshall, 48 Mo. App. 565; Kane v. Railroad, 112 Mo. 39; Bowers v. Smith, 111 Mo. 64.   (4)  The reason of the law is to prevail.  Such a construction is to be put upon it as to render it capable of being intelligently enforced.  Bank v. Skeen, 101 Mo. 687; Grimes v. Reynolds, 68 S. W. 588; State ex rel. v. Slover, 126 Mo. 660; Fosburg v. Rogers, 114 Mo. 134; St. Joe ex rel. v. Landis, 54 Mo. App. 322.   (5)   Contemporaneous and continued construction by officers who interpret and enforce laws beget property rights.  Verdin v. St. Louis, 131 Mo. 124; Venable v. Railway, 112 Mo. 125; State ex rel. v. Railroad, 145 Mo. 637; Ross v. Railroad, 111 Mo. 25.

*Meservey, Pierce & German* for respondents.

(1) The use of the words, "previous installment," in the exception excludes everything else.  The expression of one thing is the exclusion of another.  An express exception, exemption or saving excludes all others. State ex rel. v. Fisher, 119 Mo. 351.   (2)  When a general rule has been established by statute with exceptions, the court will not curtail the former or add to the latter by implication.  State ex rel. v. Fisher, 119 Mo. 351. (3)  The charter must be strictly construed.  Every statute in derogation of the rights of property or that takes away the estate of the citizen, ought to be construed strictly.  Fowler v. St. Joseph, 37 Mo. 238; Judson v. Smith, 104 Mo. 73; Stone v. Kelly, 59 Mo.

App. 218; Guinotte v. Eglehoff, 64 Mo. App. 356; West v. Porter, 89 Mo. App. 153; Kiley v. Oppenheimer, 55 Mo. 274; Smith v. Barrett, 41 Mo. App. 460; Fury v. Boeckler, 6 Mo. App. 26.    (4) Principles of interpretation, the intent.    It is only where the phraseology of an act is ambiguous that resort may be had to the intention of the legislature to aid in construction.    State ex rel. v. Gammon, 73 Mo. 426; State ex rel. v. Johnson, 132 Mo. 109; Hicks v. Jamison, 10 Mo. App. 35.    (5)    The previous law.    Burnes v. Ballinger, 76 Mo. App. 63. (6)    Is the construction of the court below reasonable? (7)    Every word in a statute has its appropriate meaning.    McClanahan v. West, 100 Mo. 322.

SMITH, P. J.—This is a suit on certain special taxbills, which was begun on May 29, 1900.    The date of the taxbills was December 17, 1895.    On May 31, 1896, the first installment became due, also the interest on the second, third and fourth, and were paid.    On May 31, 1897, the second installment became due, also interest on the third and fourth, and were paid.    On May 31, 1898, the third installment became due, also interest on the fourth.    On May 31, 1899, the fourth installment, according to its terms, became due.    Neither of the latter were paid.    The petition was in four counts, one of which is based upon each of the two unpaid installments of the two taxbills.

The defendants demurred to each count of the petition for the reasons, first, that they severally did not state facts sufficient to constitute a cause of action; second, that the allegations in each show that the lien of the taxbills had expired prior to the commencement of the suit.    This demurrer was sustained by the trial court; and, plaintiff declining to plead further, judgment was rendered on each count of the petition in favor of the defendants.    From that judgment plaintiff has appealed.

The question thus presented for decision is, whether

or not a suit, as here, to enforce the lien of an install-
ment taxbill which was begun within one year after the
date of the maturity of the last installment, as therein
recited, was seasonably begun. It is suggested that its
decision must be dominated and controlled by that in
Burnes v. Ballinger, 76 Mo. App. 58.

The question passed upon in that case arose under
the provisions of the statute relating to cities of the
second class. Art. 3, chap. 30, R. S. 1889. In one of
the sections thereof (1405) it was expressly provided
that "the owner of any lot or parcel of ground fronting
on such street shall within ten days after the letting
of the contract for such work notify the city engineer
in writing that he *desires to pay for such work in five
annual payments,* then the city engineer shall make out
*five special taxbills* for each one-fifth part of the cost
of such work, bearing interest as aforesaid, which rate
shall be fixed in each case by ordinance—each payment
to bear not to exceed ten per cent interest from the date
of issue to date of payment, which rate shall be fixed by
ordinance — said interest payable semiannually on the
first days of February and July of each year at the
office of the city treasurer; *and if default is made in the
payment of the interest due on either of said days, then
the principal and interest due on such special taxbills
shall become due and payable and may be collected as
provided in section 1407,"* which provides that, "every
such taxbill shall be a lien on the property therein de-
scribed, against which the same may be issued on the
date of the receipt of the city engineer therefor, and
such lien *shall continue two years after the maturity
thereof but no longer,* unless suit be brought to collect
same," etc. In the case just referred to (Burnes v.
Ballinger) there had been five special taxbills issued
under said section 1405 and dated December 7, 1892.
Default was made in the second which was due and pay-
able on July 1, 1893, and this had the effect, under the
statute, to make due and payable, as of that date, the

three others, though according to the terms thereof they became due and payable later on. The suit on all of the taxbills was not begun until more than two years after the default on that becoming due and payable on July 1, 1893. It was held that since there had been a default in payment of interest on all the taxbills more than two years before the suit was brought on them, they had all become due more than two years before that event and were therefore then barred.

But the statute influencing that decision is to be distinguished from the charter provision under which the taxbill sued on in this case was issued, and for that reason we do not think that decision should be accepted as a guiding precedent in this. The taxbills here were issued under the provision of section 23, article 9, of the charter, which is as follows:

"The common council may by ordinance provide that special taxbills . . . shall be made payable in four equal installments, and such taxbills when issued, shall be payable and collectible as follows: The first installment shall become due and collectible on the 31st day of May (following or the second following the date of issue of the taxbills), . . . the second installment shall become due and collectible in one year, the third installment in two years, and the fourth installment in three years after the first installment is due and collectible, as above mentioned. . . . Such taxbills, including each installment thereof, if not paid in full before the expiration of thirty days from the date of issue thereof, shall bear interest from the date of issue at the rate of seven per cent per annum, and when any installment becomes due and collectible as herein provided, interest thereon and all unpaid installments shall be due and collectible to that date. If any installment of any such taxbills or interest thereon be not paid when due, then *all the remaining* installments shall immediately become due and collectible, together with interest thereon at the rate of ten per cent per annum

from the date of the issue of such taxbills, less the sum of any interest that may have already been paid on said installments. Suits may be brought to enforce the payment of such taxbills or any installment or installments thereof, with all interest thereon, in the manner herein provided for the bringing of suits on other taxbills. . . . The lien of all taxbills issued under this section *shall continue for a period of one year after the last installments specified therein shall have become due and payable and no longer,* unless within such year suit shall have been instituted to collect such taxbill and notice of the bringing of such suit shall have been filed with the city treasurer, in which case the lien of such taxbill shall continue until the termination of such suit, and until the sale of the property under execution on the judgment establishing the same; and no default in the payment of any previous installment shall operate to diminish the period during which such lien shall continue. Such taxbills and liens thereof shall be assignable and shall be of the same force and effect, and suits may be brought thereon in the same manner as other taxbills issued by this city, and all other provisions relating to special taxbills issued pursuant to the authority given in this article shall apply to those issued under this section, excepting so far only as the other provisions of this article conflict with those contained in this section.''

It will be observed that the foregoing charter provision authorizes the issue of not five distinct taxbills as the statute does, but only a single taxbill to be payable in four annual installments, and that it also provides that if default shall be made in the payment of the first, second or third, or the interest thereon, that the effect of that default shall be to make due and collectible (payable) any installment which by its terms is to subsequently become due and collectible, and *that the lien shall continue for a period of one year after the last installment of the taxbill shall become due and payable and no longer.* Under the statute the lien continues for

two years "after the maturity of the taxbills," no difference when that is, but under the charter the lien continues for a period of one year after the last installment specified in the taxbill shall become due. To hold that the accidental circumstances of a default by the abutting lot-owner in the payment of the first, second or third installment, shall have the operative effect to start the running of the statutory period of limitation from that point, would be to adopt a construction that would nullify and abrogate that part of the said charter which expressly declares that it shall continue for a period one year after the last installment shall become due and collectible, or, which is the same thing, that it shall continue for one year after the last installment shall by its terms become due and collectible.

If the freeholders had intended to provide that the one-year period should begin to run from the date of the accident of a default in the payment of any one of the installments except the last, then they surely would not have declared, as they did, that the period should continue for one year after the last installment of the taxbill should be come due and collectible. Their expression would have been different from that employed by them in the section of the charter quoted. There is no rule of construction with which we are acquainted that would justify us in concluding that it was the intention of the freeholders to declare by the language employed in that section that the lien of the taxbill should continue for the period of one year after the last installment of it became due according to its terms *only* where the prior installments were all paid in the order they became due and collectible, or that the period of limitation should by the accident of a default in the payment of any prior installment be made to begin and end at an earlier date. This charter provision has been in force for more than ten years, and under it many thousands of special taxbills have been issued for street improvements in the payment of which default has been made and for the

enforcement of the lien thereof various suits have been brought, and in the defense of which the abutting lot-owners employed many of the ablest and most learned lawyers in the western part of the State who interposed every defense—every objection that the resources of their combined genius could evolve or suggest—in that behalf, but the construction here contended for was never thought of or invoked by any of them in any case so far as we can discover, but the distinction was left to be accorded to the very able and ingenious counsel for the defendant—late as he is in the field—to urge it for the first time in this case.    So far as we know, for a period exceeding two Roman lustrums it has been the accepted construction of said charter provision by lawyers and laity that the lien of a taxbill issued under it continued for a period of one year after the last installment thereof became due according to the terms of that installment.

No doubt if the construction contended for by defendant and adopted by the trial court be approved by us, many owners of defaulted taxbills will find out for the first time that they have slept on their rights and that the lien of their taxbills has expired by the lapse of time, and that what they have been led to believe a valuable security has perished.    Under the construction that the lien of the taxbill continues for the period of one year after the last installment thereof becomes due according to the terms thereof—a construction hitherto unquestioned—we have the right to assume that thousands of dollars have been and are invested in such taxbills which the holders, after default in the payment of the installments or the interest thereon, have, in fancied security, refrained from suing until the time for doing so, under defendant's constructions, has passed.    The construction adopted by the trial court would in its effect be most mischievous in its consequences.    It could not benefit either the property-owner or the contractor

making the improvement, nor, indeed, any one. The general understanding of the law and the constant practice under it for so long a period as here, unquestioned by public or private action, is persuasive evidence of the true meaning. Venable v. Railway, 112 Mo. 1. c. 123; Sedgwick on Const. and Stat. Law, 213. It is asserted and not disputed that it has been the common opinion of the members of the legal profession, who have heretofore had occasion to construe the said charter provisions that the lien therein provided continued for one year from the date the last installment of the taxbill became due according to its express terms, and this is at least good evidence of what the law is. *Optimus interpres legum consuetudo.*

We conclude that a reasonable and practical construction of the said charter provision requires us to hold that the lien of a special taxbill issued under it continues for one year from the date the last installment becomes due according to the terms therein expressed; and from this it results that the action of the trial court in sustaining the demurrer was an error for which the judgment must be reversed and the cause remanded. *Ellison* and *Broaddus, JJ.,* concur in separate opinions.

BROADDUS, J. (concurring).—As this case has been sufficiently stated in the separate opinions of Judges SMITH and ELLISON, I shall therefore only briefly state my conclusions of the law which governs the question at issue.

Under the first clause of section 23, ''such taxbills when issued shall be payable and collectible as follows: The first installment shall become due and collectible on the 31st day of May next succeeding the date of issue of the taxbills, provided, etc.; the second installment shall become due and collectible in one year; the third installment in two years; and the fourth installment in three years after the first installment is due and collectible, as above mentioned.'' The fourth clause, which is

general in its nature, is that "the lien of all taxbills issued under this section shall continue for a period of one year after the last installment specified therein shall have become due and payable, and no longer." The fifth clause, "and no default in the payment of any previous installment shall operate to diminish the period during which such lien shall continue."

The contention arises out of the proper construction of this clause. Under clause three, the last installment becomes due and collectible upon default in the payment of a previous installment, but no reference is made as to the lien of the taxbill itself. It seems to me that the language means just what it says: that the lien "shall continue for a period of one year after the last installment *specified therein* shall become due and payable, and no longer." That is, the lien of the taxbill shall continue for one year, not after the last installment *may* become due by reason of default in the payment of a prior installment, but after the last specified installment shall have become due by the terms of the taxbill itself. The language that no previous default "shall operate to diminish the period during which the lien shall continue," refers to what lien? Certainly the lien of the taxbill and not merely the lien of the last installment. To hold that it refers alone to the lien of the last installment would do violence to the plain language of the clause, and in my opinion to the intent of the lawmakers.

For these reasons I think the cause should be reversed.

ELLISON, J. (concurring).—The charter provisions involved are found in section 23 of article 9, of the charter of Kansas City. The section is lengthy and for convenience in argument has been very properly abridged by the respective counsel. So far as is necessary for a construction of the section as applicable to

this case we need only notice five clauses which we designate as first, second, third, fourth and fifth:

1. "Such taxbills when issued shall be payable and collectible as follows: The first installment shall become due and collectible on the 31st day of May next succeeding the date of issue of the taxbills, provided, that if such period is less than thirty days after the issue of the taxbills, then the first installment shall become due and collectible on the 31st day of May of the next year; the second installment shall become due and collectible in one year; the third installment in two years, and the fourth installment in three years after the first installment is due and collectible, as above mentioned."

2. "When any installment becomes due and collectible, as herein provided, interest thereon and on all unpaid installments shall be due and collectible to that date."

3. "If any installment of such taxbills or interest thereon be not paid when due, then all the remaining installments shall immediately become due and collectible."

4. "The lien of all taxbills issued under this section shall continue for a period of one year after the last installment specified therein shall have become due and payable and no longer."

5. "And no default in the payment of any previous installment shall operate to diminish the period during which such lien shall continue."

The principal and interest of the third installment, and the interest for the third year on the fourth installment, were defaulted more than a year before this action was brought; but the principal of the fourth installment was defaulted within less than a year of bringing the action.

Defendant contends that the default of the third year's interest of the fourth or last installment caused it to become due and that more than a year having elapsed before bringing suit, the lien of both the third

and fourth installments is barred. I think not. The second clause of the section of the charter provides that when an installment becomes due, the interest thereon and on each of the other installments shall also be due, but no penalty is added for non-payment of such interest.

But the third clause does provide a penalty, viz., that if any installment, and the interest on such installment, shall not be paid when due, then all the remaining installments will become due. The installments are not made to become due before the time specified on their face by a default of the annual interest on any installment which is itself not due on its face. There may be a default in payment of the annual interest on installments not due, and it will not affect them. The only default of interest which will alter the face of such future installments is a default in the payment of the principal or interest of an installment which has become due, for so the charter reads.

The third clause of the charter matures all the remaining installments on a default of one for the purpose of collecting the taxbill, if the holder so elects. But under the fourth and fifth clauses, if he does not so elect, the lien of the taxbill continues for a year after the last installment becomes due, unaffected by a default in any of the installments due previous to the last one, that is to say, shall become due on its face.

I concur in reversing the judgment and remanding the cause.