THE RIVERVIEW STATE BANK, RESPONDENT, v. ELIZABETH M. COURT-NEY, APPELLANT.—74 S. W. (2d) 81.

Kansas City Court of Appeals.   May 24, 1934.

*Will H. Hargus* and *Clarence S. Palmer* for respondent.

*O. H. Swearingen* for appellant.

TRIMBLE, J.—This is a suit on an installment special tax bill issued by the city of Pleasant Hill, Missouri, No. 25, dated October 5, 1926, in part payment of the cost of paving the roadway of First Street in said city from the center line of Wyoming Street to the center line of Commercial Street, to the amount of $134.80 on the West half of Lot 2, Block G, Pacific Railroad Addition, Pleasant Hill, Missouri.

The petition alleges that the work was done in accordance with the provisions of a city ordinance No. 507, approved August 3, 1926; that after the work was done, the cost was computed and apportioned against the lots, exclusive of improvements, abutting on said street, in proportion to the front foot, and same was reported to the city council and the respective amounts of said apportionments were levied and assessed against each lot abutting on said street. The said special tax bill, with the seal of said city affixed, was filed with the petition as Exhibit A;

That said special tax bill was duly assigned by the contractor to whom it was issued, to plaintiff for a valuable consideration prior to the bringing of the suit;

That the above described real estate is legally chargeable in favor of plaintiff, on account of its proportionate cost of the work with the said sum of $134.80 with eight per cent interest from November 4, 1926; that plaintiff is the legal owner and holder of said special tax bill; that defendant owns or claims to own the said land, but same is subject and subordinate to the rights of plaintiff under the said special tax bill, wherefore, special judgment was prayed for $134.80 with interest and for the enforcement of the lien against the land and for costs.

The answer admitted that defendant was the owner of the land in question, but denied everything else.

The answer then set up that plaintiff is without legal capacity to sue, as any suit to recover for special taxes assessed by said city, and especially for the tax bill in plaintiff's petition, must be brought in the name of said city and not otherwise;

That no such ordinance as mentioned in said petition was ever passed or is of record in the proceedings of the council of said city;

That the action of the city council, in causing First Street, mentioned in the petition to be paved, for which the tax bill in said petition is alleged to have been issued was "arbitrary, fraudulent and oppressive and for that reason said tax bill is void;"

That within the time prescribed by law, a majority of the resident owners of the real estate confronting and abutting on said First

Street signed and filed with the city clerk a written remonstrance against the proposed paving of said First Street, wherefore, the power of the council to order said paving ceased;

That the city council was without jurisdiction to act in the matter to pass said ordinance or to issue said tax bill because a majority of the resident owners of real estate abutting upon said First Street and required to pay for such proposed paving, filed in due time and with the proper city officials a written remonstrance against the same;

That at the city council meeting August 3, 1926, at which the ordinance alleged to have provided for the paving of said First Street, for which the tax bill was issued, and at the opening of said meeting, the mayor, presiding officer, announced that a sufficient protest had been filed against the paving of said street, and directed the check theretofore deposited by the contractor as a guarantee to carry out any contract that might be let to him, to be returned to him, and "the city clerk left the city council meeting and went after said check, and that thereupon this defendant and her agents and representatives left said council meeting with the understanding and belief that no further action would be taken in said matter at said meeting;"

That no proper estimate of the cost was ever filed with the city council after the contract was let, as is required by law;

That the amount of said tax bill is excessive, in that it contains an amount for attorney's fees, engineer's work, cleaning, grading the street and putting in curbing;

That the resident property owners abutting on said First Street were fraudulently procured to sign a petition for the paving of said First Street by promises made by and on behalf of said contractor to the effect that the total cost to such signers would not exceed $6.75 for cleaning, grading, curbing and paving said First Street;

That one William Gustin or the firm of Gustin & Son, a resident owner of property fronting and abutting on said First Street, joined and signed with the defendant and other protesters, who were resident property owners, a sufficient protest against said paving in due form, and, within the time provided by law, said protest was duly filed with the city clerk, the proper official of the city, and that said name or protest was never legally and properly withdrawn by said firm or William Gustin; that if he attempted to do so, it was after the time provided by law for filing a remonstrance had expired, and after the council meeting at which the ordinance for paving said street is alleged to have been passed.

Other defenses were sought to be set up but, with one exception, they are either the same as in the foregoing, stated in different language, or are matters which seem to have been abandoned, since they were not mentioned at the trial nor anywhere in the briefs.

The only remaining defense that does not seem to have been abandoned, is that the tax bill matured on or about October 5, 1927, more than one year prior to the date of the filing of the petition, hence plaintiff has no right to a lien on the property, it having expired by limitation.

The plaintiff's reply was, first, a general denial of all new matter in the answer; next, an allegation that the city council, by ordinance, declared that a majority of the resident owners of property abutting on said street did not file with the city clerk a protest against said improvement.

After a trial, the court rendered judgment reciting that the tax bill described was issued by the city on the 5th day of October, 1926, under ordinance No. 507, approved August 3, 1926, "for the cost of cleaning, and repairing the macadam base and paving the roadway of First Street in said city from the center line of Wyoming Street to the center line of Commercial Street," and that there is due plaintiff thereon $134.80 with eight per cent interest from the 4th day of November, 1926, amounting to $62.43, making a total amount of $197.23, "and that said sum, together with the costs of this action is a special and first lien on the said tax bill described, to-wit: West half of Lot 2, Block G, Pacific Railroad Addition, in the city of Pleasant Hill, Cass County, Missouri." Wherefore, judgment was rendered for $197.23 with interest from date at six per cent from date of judgment together with costs, to be levied and made off of said land, and that special execution issue therefor.

Defendant has appealed.

The petition was filed October 3, 1931. The case was heard at the February term, 1932, of the Cass County Circuit Court, was argued at the June term and judgment was rendered at the September term, 1932.

Pleasant Hill is organized as a city under a special charter from the Legislature, Session Acts, —, page —. The provisions governing proceedings for paving streets at the time the same were had and done, were Sections 8758, 8759, Revised Statutes of Missouri, 1919, now Sections 7344 and 7345, Revised Statutes of Missouri, 1929. It is admitted that defendant is the owner of the land described in the petition and tax bill; also that the tax bill was signed by the city officers and the assignment of the tax bill to plaintiff is genuine; that the bill was issued by the city of Pleasant Hill under ordinance No. 507 and that it bears the seal of said city.

It is also admitted that the remonstrance was sufficient with the Gustin, or Gustin & Son firm, name on it as one of the protesters, but that, without said name, it was insufficient.

With reference to the point that the judgment is excessive by five and two-tenths per cent of the total cost arising from a slight error in computation of the amount due, we dispose of it at the

outset by saying that at the trial plaintiff conceded this. No doubt, owing to the fact that the evidence was heard at the February term but the judgment was not rendered till the September term, the conceded deduction was overlooked. There is some contention as to whether this excess was mentioned in the motion for new trial. However, plaintiff does not stand on this, but consented that the deduction should be made, and on March 14, 1934, filed a *remittitur* of said excess, reducing the amount due on said judgment to $186.98 as of September 12, 1932, so that no reversible error can be claimed on the ground of the excessiveness of the judgment.

It is said the court erred in overruling defendant's objection to the introduction of any evidence under the petition for the reason that there is no allegation stating where the land is located. We cannot uphold the contention. The only matter which is not stated in the petition is the fact that the lot on which the tax bill was issued, is in Cass County, all other matters are definite and precise. This slight defect, if it may be so called, is certainly not one that can be met and made reversible by a simple objection to the introduction of any evidence. [Barrie v. Ranson, 46 S. W. (2d) 186, 187.] The other citations of Scott v. Vincennes Bridge Co., 299 S. W. 145; Vaughn v. Daniels, 11 S. W. 573; Miner v. Sever, 255 S. W. 578, merely hold, either that no description at all will be fatal to a petition, or that the tax bill attached as an exhibit cannot be looked to in order to "eke out" the petition or supply necessary allegations therein which are missing.

The record discloses that the last publication of the resolution of the City Council of Pleasant Hill declaring it "necessary to clean and repair the present macadam base on that part of the roadway of First Street in said city from the center line of Wyoming Street to the center line of Commercial Street, and all roadway and alley intersections within said First Street within the limits aforesaid, as shown by plans and profiles on file with the city clerk, and to pave the same with two inches of Asphaltic Concrete, using Natural Lake Asphalt," etc. (See Sec. ·7345, R. S. 1929), was on June 11, 1926. The protest, authorized by said Section 7345, was filed on the last day of the ten prescribed by said statute, to-wit, on June 21, 1926. On the same day, *and before the council had acted on it*, one of the protesters or remonstrators, Gustin or the firm of Gustin & Son (whose name thereon, as heretofore stated, was necessary to constitute the remonstrance a majority of the resident lot owners whose property abutted on the proposed improvement), filed a written withdrawal of his, or the firm's name in words as follows:

"To the City Clerk,

"City of Pleasant Hill, Missouri.

"You will please remove my name from the remonstrance against the pavement project, on resolution number 5, on First Street in the City of Pleasant Hill, Missouri, filed with you on this date.

"This the 21st day of June, 1926.

"(Signed)    GUSTIN & SON.

"Witnesses

"JAMES T. LAIN,

"JAS. P. FARMER,

"D. LYNWOOD LAIN,

"8:40 p. m."

Over the objection of plaintiff, it was offered in evidence that at a meeting of the city council held August 3, 1926, the mayor said to Mr. Gustin, "It is up to you, Bill. We will go ahead if you say so. If not, we won't. Bill said, 'I can't say go ahead.'" The mayor then suggested, "You will be responsible if this paving is killed." Mr. Gustin said, "I don't look at it that way." The mayor then said, "That kills the paving proposition." The contractor said, "I want my check back." "Mr. Fleming then moved to return the check and cancel the proposition. Mr. McCrory seconded the motion, and the mayor said, 'That settles it. Give Mr. Brindle (the contractor) his check,' and he (the mayor) directed the clerk to get the check and he (presumably the clerk) left for the check."

The foregoing is not the record of the city council or the city clerk. It is merely the notes made by an interested spectator who was present at the meeting and who, at the trial, orally testified to some notes he had made at the time. Again, one of plaintiff's attorneys objected saying, "That is not the best evidence of what happened, the records of the council show what happened." This, however, was overruled and plaintiff saved his exceptions.

Whatever may have been the *informal and preliminary talk* at the council meeting of August 3, 1926, the records of the council show that on that date, an ordinance was passed on said evening Number 507, providing for the improvement, which, in said ordinance, the council declared that a resolution, declaring the work above specified to be necessary, was adopted by the city council on June 2, 1926, and was published in the Pleasant Hill Times, a weekly newspaper published in said city, on June 4, and June 11, 1926, respectively. Said ordinance also stated that the "city council finds and declares that a majority of the resident owners of the property liable to taxation therefor, who own a majority of the front feet, owned by residents of the city, abutting on said street proposed to be improved, have not filed with the city clerk a protest against such improvement."

The ordinance then went on to specify how the work should be paid for and that special tax bills be issued therefor, and the clerk was directed to advertise for bids, etc.

The statute, under which the tax bill in question was issued makes the same *prima facie* evidence of its validity, and the petition was undoubtedly sufficient. [Subdivision 13 of Sec. 7344, R. S. Mo. 1929; City of Gallatin v. Netherton, 189 Mo. App. 24; Fellows v. Dorsey, 171 Mo. App. 289; Barber Asphalt Paving Co. v. Kihlberg Karlsbad Bath Co., 136 Mo. App. 555, 557.]

We are unable to see wherein the city council perpetrated a fraud upon defendant. While the informal talk in the council preceding the official action thereof cannot prevent, undo, or in any way affect such official action, there is nothing in the way of *fraud* appearing in the case. Gustin, or Gustin & Son, undoubtedly had the right to withdraw, and did withdraw, that name from the protest or remonstrance. The filing of the written request to that effect was a withdrawal of said name. If the mayor did, at said meeting and before the filing of said withdrawal, announce that the protest was sufficient to defeat the proposed improvement, that was *true* at the time of such announcement, but the filing of the withdrawal shortly thereafter, changed matters so that the protest was then *insufficient* and left the council with full power and authority to proceed to pass the ordinance. The informal preliminary talk gave defendant no "vested right" to have matters remain as they were when she and her representatives left the meeting. Nor did the failure of the clerk to actually strike the withdrawn name from the protest or remonstrance, change matters. The withdrawal was complete when the written request was filed. And said withdrawal was in time since it was within the ten days and before the council acted. This fact renders the case of Rhodes v. Koch and the City of Springfield, 189 Mo. App. 371, inapplicable and not in point, for there the remonstrance, as it was, remained on file for ten days after the completion of the publication. The city council had the undoubted right to pass the ordinance, as matters *then* stood. [Sec. 7345, R. S. 1929; Sedalia v. Scott, 227 Mo. 1. c. 28; City of Sedalia v. Montgomery, Jr., 109 Mo. App. 197, 219-221; City Trust Co. v. Crockett, 309 Mo. 683, 711; Blackwell v. Lee's Summit, 326 Mo. 491, 501.] At the time of the informal talk or discussion hereinbefore referred to, namely, August 3, 1926, wherein it is urged that, from what Gustin there said, he was rather in favor of the protest; but clearly this was after the ten days were up and so no name could be added to or taken from the protest. What was finally done is shown in Ordinance No. 507 and as it was in accordance with the law and the facts, said ordinance is valid and there was no fraud in its passage.

We see no invalidity in the tax bill because it included in its amount certain costs inherently, necessarily and impliedly involved

in the doing of the work. Section 7345, Revised Statutes of Missouri, 1929, provides for the letting of the contract on plans and specifications; Subdivision 12 of Section 7344, Revised Statutes of Missouri, 1929, directs that an "estimate of the" cost shall be made for the work. In conformity with the statute, the ordinance provided that such work should be done according to the plans and specifications, and Subdivision 9 of Section 7344 provides that the cost shall be paid by special assessment on the abutting land. All items that necessarily enter into the making of the improvement are necessarily a part of the "entire cost" of the improvement. [Pflueger v. Kinsey, 320 Mo. 82.]

The error in computation of the amount due seems to have arisen from an error in including the cost of street and alley intersections, instead of as provided in Subdivision 14 of Section 7344, Revised Statutes of Missouri 1929. Plaintiff at once upon this discovery, put an engineer on the stand and by computation proved that such error amounted to the five. and two-tenths per cent excess hereinabove referred to, and which plaintiff's own evidence shows and concedes should be deducted from the amount asked. It devolved upon defendant to plead and prove such error, and it was the one the plaintiff voluntarily admitted, but by oversight as hereinbefore stated, it was not deducted in the writing up of the judgment. As heretofore held, this does not invalidate the bill, but will result in the above mentioned reduction of the judgment affirmed. [Walsh v. First National Bank of Monett, 139 Mo. App. 641, 648; Neenan v. Smith, 60 Mo. 292; Neil v. Ridge, 220 Mo. 233.] This, however, *under the circumstances herein,* does not call for the application of anything other than the usual rule as to costs.

Finally, it is said that the Statute of Limitation had run at the time suit was filed. Under Subdivision 11 of said Section 7344, the lien for special tax bills shall exist "for a period of five years after date of issue, unless sooner paid, except in the case of tax bills payable in installments, the lien of which shall expire one year after the maturity of the installment last maturing."

The tax bill was issued October 5, 1926; the bill, at the request of the owner of the tract, was issued payable in five installments the first due and collectible on October 5, 1927, and the rest on the same annual date in 1928, 1929, 1930 and 1931. Suit was brought October 3, 1931. It is true that Subdivision 15 of said Section 7344 provides that when any installment "is not paid when due, then all the remaining installments shall at once become due and payable;" but this says nothing about limitation and does not affect the duration of the lien as fixed in Subdivision 11. Barber Asphalt Paving Co. v. Meservey, 103 Mo. App. 186, 192; Gibson, etc., Const. Co. v. Arkansas, etc., Coal Co., 205 Mo. 49, 63; Ruecking Construction Co. v. Wetherall, 269 Mo. 546, 559-60, where the court held that

limitation does not expire until after the statutory length of time from the date the last installment becomes due. The same holding was announced in Bates v. Hirsch, 270 S. W. 141, 142.

The law was complied with in the issuance of the tax bill. No claim is made that the work was not properly done. There is no legal reason why the judgment should not be upheld for the amount specified hereinabove in connection with the *remittitur*, viz.: that the case be remanded with directions to reduce the judgment by five and two-tenths per cent as of the date of the original judgment, to-wit, September 12, 1932. It is so ordered. All concur.