JACOB J. PFLUEGER v. EDMUND R. KINSEY ET AL., Constituting Board of Public Service of City of St. Louis; LOUIS NOLTE, Comptroller of City of St. Louis; J. WILLIAM CALDWELL, Assessor of Special Taxes of City of St. Louis; K. A. SHOPTAUGH and THOMAS A. BOOTH, Appellants.—6 S. W. (2d) 604.

Court en Banc, May 18, 1928.

84

*Julius T. Muench* and *Charles J. Dolan* for appellants.

*Fred J. Hoffmeister* for respondent.

ATWOOD, J.—This is an appeal from a judgment for plaintiff on the pleadings in an injunction suit instituted by him in the Circuit Court of the City of St. Louis to prevent defendants, who appear here as appellants, from including a charge for engineering and inspection as a part of a special tax about to be levied against certain real estate owned by plaintiff for the improvement of a street in what is known as "Richard Place" in said city. We look to the pleadings for the facts in the case.

Plaintiff's amended petition alleged that he was a resident of the city of St. Louis, Missouri, and the owner of certain real estate situated therein; that defendants Edmund R. Kinsey, Robert B. Brooks, John H. Brod, John C. Pritchard and Harry L. Salisbury constituted the Board of Public Service of the City of St. Louis; that defendant Louis Nolte was the duly elected and acting Comptroller of the City of St. Louis; that J. William Caldwell was the person designated by the Board of Public Service, by resolution duly entered

on its records, to prepare and sign special tax bills in accordance with the provisions of Section 1 of Article XXIII of the Charter of the City of St. Louis, and that he was also the person designated by the said board to register said tax bills in the office of the said board; and that K. A. Shoptaugh and Thomas A. Booth were the persons designated by the Comptroller to register and certify such tax bills in the office of said Comptroller; that on July 6, 1926, a certain ordinance of the city of St. Louis was approved by the Mayor of said city, known as Ordinance No. 35229, being an ordinance to establish a benefit or taxing district for the improvement of Richard Place from Carter Avenue to Kennett Place, and that by said ordinance the said property of plaintiff was included within the said benefit or taxing district; that said ordinance became effective August 5, 1926, and that said Board of Public Service designated October 5, 1926, as the day upon which they would consider the proposed improvement, having given two weeks public notice in the City Journal, being the paper doing the city publishing, of the time, place and matter to be considered, and of the estimated cost of the improvement, said estimate covering several classes of material; that after the conclusion of said hearing. the said Board of Public Service recommended to the Board of Aldermen an ordinance providing for the improvement of Richard Place from Carter Avenue to Kennett Place, being Ordinance No. 35533, which was approved January 3, 1927, and became effective on February 2, 1927; that by Section 6 of said ordinance it was provided that, upon completion of the work done by the contractor, a final estimate of the entire cost of the work should be made, to be arrived at by applying certain unit prices to the quantity of labor and material ascertained to have been done and furnished, and adding to the results so obtained a sum equal to six per cent thereof for engineering and inspection fees, which sum should be paid by the contractor to the city, and that the total cost of the work, including the aforesaid cost of engineering and inspection, should be levied and assessed in the following manner: One-third of the entire cost, including six per cent for engineering and inspection fees as aforesaid, to be levied and assessed against all the lots or parcels of ground abutting on the work or improvement ratably by lineal feet so abutting, and the remainder of the entire cost to be levied and assessed ratably by area against all the lots or parcels of ground within the benefit or taxing district established by Ordinance No. 35229, exclusive of public highways; that when said work was completed the same should be paid for by the issuance and delivery to the contractor of special tax bills, in accordance with Article XXIII of the Charter of the City of St. Louis; provided, that, before such special tax bills should be delivered to the contractor, he should pay into the city treasury the amount of such engineering and

inspection fees ascertained as aforesaid. Said amended petition further alleges that thereafter, on the 10th day of May, 1927, a contract was duly let to the Trinidad Asphalt Manufacturing Company by the said Board of Public Service, in pursuance of said ordinance, and that the said Trinidad Asphalt Manufacturing Company has commenced work, in accordance with the terms of said contract, and that defendants are about to charge the entire cost and expense of said improvement, including six per cent, as aforesaid, to cover the cost of engineering and inspection services furnished by the said city, against the lots included within the benefit or taxing area fixed by said ordinance, including the property of plaintiff, and that defendants are about to levy and assess the total cost so ascertained, including the cost of the engineering and inspection services, as aforesaid, as a special tax against each of said lots of ground, including the lot of ground owned by plaintiff, and are about to cause to be issued against the plaintiff's said land a special tax bill, on account of the aforesaid improvement. Said amended petition further states that defendants are without authority to charge against the property of plaintiff, as the expenses of engineering and inspection services, six per cent of the entire cost and expense of the said improvement, computed according to the terms and prices of the said contract, and are without authority to include such expenses in the special tax bills to be levied and assessed against the aforesaid lots of land included in said Ordinance No. 35229, for the reason that the said charge of six per cent is not authorized by the Charter of the City of St. Louis; for the further reason that the persons rendering said engineering and inspection services are employees of the city of St. Louis whose compensation is paid out of the general revenue of said city, their duties not being confined to services that are paid for by such assessments, but including services rendered directly to the said city as a municipal corporation; and for the further reason that said charge of six per cent is based on an estimate of the probable cost of engineering and inspection services, made in advance of the performance of the work provided for in said contract. Plaintiff, in said amended petition offers to pay into court the amount that should be lawfully assessed against him for said improvement less the aforesaid six per cent for engineering and inspection services, and pleads that the proposed levy would be a cloud on the title of his property, cause him *irreparable* damage, and that he is without any adequate remedy at law. Full injunctive relief is prayed.

In their answer defendants admitted all allegations of fact in plaintiff's amended petition contained, and further pleaded as follows:

"Further answering, defendants state that they are authorized under the Charter of the City of St. Louis to charge against the property

of plaintiff, as the expenses of engineering and inspection services, six per cent of the entire cost and expense of the said improvement, computed according to the terms and prices of the said contract, and are authorized to include such expenses in the special tax bills to be levied and assessed against the aforesaid lots of land included in said Ordinance No. 35229. Defendants show to the court that Section 18 of Article XXII of the Charter of the City of St. Louis provides that, when any public work or improvement, to be paid for in whole or in part by special assessment, is completed, the Board of Public Service shall cause the entire cost and expense thereof to be computed, and shall levy and assess such cost and expense or the part to be paid by special assessment, as a special tax, in accordance with the requirements of this article, and shall cause to be issued a special tax bill against each lot or parcel of ground liable in the manner provided by Article XXIII, or by ordinance not inconsistent therewith. Defendants admit that the persons rendering such engineering and inspection services are employees of the city of St. Louis; that their compensation is paid out of the general revenue of the said city, and that their duties are not confined to services that are paid for by such assessments, but include services rendered directly to the said city as a municipal corporation, but defendants state that the services that will be rendered by said employees of the city of St. Louis to plaintiff for engineering and inspection in connection with the said work, are necessary for the performance of the said work; that they are an integral and essential part of said work, and are included in the entire cost and expense of the said work, which the Charter provides shall be paid for by special assessment as provided in the said Ordinance No. 35533. Defendants further admit that the said charge of six per cent is based on an estimate of the probable cost of engineering and inspection services, made in advance of the performance of the work provided for in the said contract, but defendants state that the actual amount of the said six per-cent charge will not be determined until after the work provided for in the said contract shall have been completed, and defendants further state that the said estimate of six per cent is based on the experience of more than ten years, during which time it has been found that in every instance the cost of engineering and inspection services has been more than six per cent of the cost and expense of labor and material, and that an addition of six per cent to the cost of labor and material to be furnished plaintiff under the said contract will be a reasonable charge, and will represent value that has actually been added to plaintiff's property."

Thereafter plaintiff filed motion for judgment on the pleadings, which was sustained, and judgment was entered in favor of plaintiff, the decree reciting that "so much of the said Ordinance No. 35533

as provides for the assessment against plaintiff of a tax of six per cent to be added to his share of the actual cost of the improvement of the said Richard Place, from Carter Avenue to Kennett Place, is null and void," and enjoining defendants from including said charge of six per cent for engineering and inspection fees in the estimate of the entire cost and expense of said improvement, or in said special tax, and from preparing, signing, registering, certifying, issuing or delivering any special tax bills including such charge.

Respondent here urges the three distinct grounds or reasons set up in his amended petition why the proposed charge for engineering and inspection services should not be included in the special assessment. Appellants contend, as alleged in their answer, that the *entire* cost and expense of said improvement should be levied and assessed against the lots or parcels of ground liable therefor; that engineering and inspection services are integral and essential parts of said improvement; and that the six per cent charge therefor is reasonable. Therefore, appellants say, their answer stated a good defense to plaintiff's petition, and the trial court erred in ruling to the contrary.

The pleadings do not state the particular kind of improvement undertaken, but apparently proceed on the theory that it is of a kind or character contemplated by the first sentence of Section 10, Article XXII, of the Charter of the City of St. Louis, which reads as follows (italics ours):

"Ordinances for grading, regrading, preparing roadbed, placing foundation, building of superstructure, including curb, gutters, roadway, paving, and cross-walks and intersections of public highways, streets, boulevards, and parkways, or for reconstruction of any such work, shall provide for payment therefor by special assessment, as follows: one-third of the *entire cost* shall be levied and assessed against the lots or parcels of ground abutting on the *work or improvement* ratably by lineal feet so abutting, and the remainder of the cost shall be levied and assessed ratably by area against all the lots or parcels of ground within the benefit or taxing district, exclusive of public highways."

Respondent suggests that the above language constitutes an enumeration of the items of cost for which property shall be liable, and that the cost of engineering and inspection not being enumerated, no charge can be made against property therefor. We do not think this language can be so construed. The enumeration is of the particular kind or character of improvements for which property can be made liable, and is in no sense an enumeration of the particular items of work that may necessarily enter into the making of such improvements. This charter provision plainly states that a definite and specific part of the *entire cost* of the *improvement* shall be levied

and assessed against certain lots or parcels of ground. A similar requirement appears in Section 18 of the same article of the Charter (italics ours), which is as follows:

"When any public work or improvement, to be paid for in whole or in part by special assessment, is completed, the board of public service shall cause the *entire cost and expense thereof* to be computed, *and shall levy and assess such cost and expense or the part to be paid by special assessment,* as a special tax, in accordance with the requirements of this article, and shall cause to be issued a special tax bill against each lot or parcel of ground liable in the manner provided by Article XXIII, or by ordinance not inconsistent therewith."

Obviously, all items of work that necessarily enter into the making of the improvement are also necessarily a part of the *entire cost* of the improvement. Such is the effect of these express charter provisions. Section 2, Article XXII, of the City Charter provides that the ordinance authorizing the particular work or improvement shall specify "that it shall be done in accordance with detailed plans and specifications finally adopted and approved by the board of public service before bids are advertised therefor." Engineering services are thus explicitly, and inspection services impliedly, made an essential integral part of the cost of the improvement.

Respondent also cites Section 4, Article XXII, of the City Charter, as follows:

"All public work, except emergency work or repairs requiring prompt attention, shall be let by the Board of Public Service in pursuance of the ordinance authorizing same. It shall advertise for bids in the paper or papers doing the city publishing. . . ."

From the foregoing respondent argues that as the items of engineering and inspection are neither emergency work nor repairs, and no provision was made for letting the same under this section of the charter, they were not done in accordance with the charter and cannot be included in the cost levied against the property. This section must be read and construed in connection with other provisions of the charter, and in the light of reason and practical experience. There may be and are items of work entering into the making of such improvements that could not be included in the letting contemplated by this section. Such services as engineering and inspection clearly could not. The Charter expressly provides that the former service shall be performed before bids are advertised (Sec. 2, Art. XXII, supra), and the service of inspection is clearly one of trust and skill that should not be rendered by those interested or engaged in the performance of the work let. There is no charter provision that the amount levied shall be limited to the amount of the contract let. Therefore, 28 Cyc. 1154, cited by respondent and holding that items

of work which are not submitted to competitive bidding, as required by statute, may not be included in the assessment, is not in point.

Respondent apparently admits the necessity of incurring expenses for engineering and inspection, but takes the position that appellants are without authority to charge such expenses against the property for the following reasons: (1) that there is no express authority in the St. Louis Charter authorizing such a charge to be made; (2) that the persons rendering said services are employees of the city, whose compensation is paid out of the general revenue of the city and whose duties are not confined to services in connection with such improvements; and (3) that six per cent does not represent the actual cost of the engineering and inspection services to be rendered in this case, but represents merely an estimate made in advance of the making of the improvement.

From what has already been said we think it follows that the express provisions of the Charter are broad enough to authorize the inclusion of a charge for engineering and inspection services in the *entire cost* of the improvement to be ascertained for the purpose of assessing property with its proper part of the cost of improvement.

In 28 Cyc. 1153, it is said: ''All expenses necessarily incident to the making of improvements may be included in the assessment; thus, the cost of surveys, and of preliminary proceedings, . . . are proper items to be included.''

In dealing with this very question the Supreme Court of Kansas, in Bailey v. Henrion, 108 Kan. 282, 1. c. 284, said:

''Included in the cost of this paving improvement was an item of five per cent for engineering expenses. Aside from the physical work of excavation, construction, and the furnishing of materials, there is a necessary expense of surveying, making blueprints, supervising the work as it progresses, and inspecting the materials used in making the pavement. Is this a proper charge in calculating the true cost of the improvement? This expense is called 'engineering;' sometimes it is called 'overhead.' Whatever the name, it is a necessary item of expenditure. It would be a very costly economy, indeed it would be absurd, to undertake an expensive work of paving construction without this 'engineering.' While the city may have an official engineer and pay him an annual salary, yet he cannot do all this work alone. He must have linemen, rodmen, and perhaps other employees, at the particular work or in his office, assisting him; and it must be held that a reasonable charge for this 'overhead,' or 'engineering,' is properly included in determining the cost of the improvement, and it is proper to take it into account in assessing that cost against the property benefited by the improvement.''

Also, in City of Atchison v. Price, 45 Kan. 296, l. c. 316, 317:

"The entire expense of such an improvement is to be charged to the property peculiarly benefited, and the engineering and supervision of the work are as essential as the excavations to be made, and we see no reason why the expense of the same should not be included in the assessment."

To the same effect is an opinion by Judge Cooley in Benitean v. City of Detroit, 41 Mich. l. c. 118:

"It is objected that there was included in the assessment the cost of advertising, superintendence, etc. But this was clearly right. This is a part of the cost of the improvement; and the statute contemplates that the whole cost, except the sum that is to be apportioned to the city, shall be covered by the assessment upon the lots."

Also, in Gibson v. City of Chicago, 22 Ill. 566, l. c. 571, 572:

"Under the direction of the city authorities, the engineer made a specification of the work, and an estimate of the expense, in which he included an estimate of seventy-five dollars for engineering and superintendence, and one hundred and fifty dollars for collecting. For the amount of the engineer's estimate including these items, this assessment was levied, and because these items were included, it is insisted that the assessment was illegal, because they were for services to be performed by salaried officers of the corporation. If these were to be a part of the expenses of the improvement or the costs consequent upon the proceeding, then the law expressly declares, that they are to be included in the assessment. That the expense of engineering and superintending is a part of the indispensable expense of the improvement, as much as the expense of breaking the stone, or hauling the material, would seem to require no argument to prove, and it was immaterial to the owners of the property, whether the corporation employed an engineer for the particular work and paid him for that alone, as they had an undoubted right to do, or employed an engineer by the year and directed him to attend to this and other work. It was no less a part of the expense of the improvement, in the one case than in the other. It was an indisputable expense, and properly included in the estimate."

Like rulings appear in Swayne v. City of Hattiesburg (Sup. Ct. Miss.), 111 So. 818, 820; In re Jackson Street, 62 Wash. 432, 435; Hurd v. Sewer Dist. No. 1 (Sup. Ct. Neb.), 191 N. W. 438, 440; Leonhardt v. City of Yonkers, 187 N. Y. Supp. 27, 30; Shryock v. Hannenen, 61 Wash. 296, 300; Burns v. City of Duluth, 96 Minn. l. c. 105, 106.

In support of his second contention that the persons who rendered the engineering and inspection services in this case, being regular city officials whose salaries were paid out of the general revenue of the city, the reasonable cost of their services cannot be included in a special assessment for the improvement, respondent cites Giles

v. City of Rosebury (Ore.), 160 Pac. 543; Longworth v. City of Cincinnati, 34 Ohio St. 101; In re Fifth Avenue Sewer, 4 Brewster (Pa.) 364, 369; and Board of Commissioners v. Fullen, 118 Ind. 158. The case of Giles v. City of Rosebury, was ruled upon the court's express finding that there was no "clause in the charter or in the ordinance under which the improvement was made that expressly authorizes the imposition of any part of the engineer's charges against the property benefited," although the charter so empowered the common council. Apparently the common council might have done so by proper proceeding, but did not. In the subsequent case of Irelan v. City of Portland, 179 Pac. (Ore.) 286, l. c. 289, the same court sustained the action of the city officials by which a special assessment was made to include five per cent of the contract price, to cover cost of engineering, etc., where the charter clearly provided that the actual cost of the engineering, etc., should be deemed a part of the cost of the improvement.

Longworth v. City of Cincinnati, cited by respondent, holds that where the salaries of engineers who performed services in connection with the improvement, the cost of which was to be paid by special assessment, were in fact "paid from the special funds of the city, as required by law, that was the end of it," in the absence of some law expressly authorizing the charge and assessment for the purpose of reimbursing the city for the amount so paid. This decision was rendered in 1877, and no supporting authorities are cited on this point. The case was evidently not subsequently regarded as controlling authority by the inferior state courts, for it is entirely ignored in the later case of Adkins v. City of Toledo, 27 Ohio Cir. 417, l. c. 422, decided in 1905, wherein a contrary view is stated on good reason and authority.

In re Fifth Avenue Sewer, cited by respondent, rejects engineering cost on the ground that the court did not "think that the time and services of the city engineer, necessarily given to the work, were contemplated as part of such cost." This is a decision of a Court of Quarter Sessions in Pennsylvania, rendered in 1870, without the citation of any supporting authority.

We have carefully examined Commissioners v. Fullen, the last case cited by respondent, and finding nothing therein bearing upon any issue in this case. In the language of that opinion, "the rejected items were not part of the legitimate expense, direct or incidental, of constructing the road."

Counsel for neither side have presented any Missouri cases directly in point, although counsel for respondent cite Walsh v. First National Bank, 139 Mo. App. 641, l. c. 648, as bearing somewhat on this case. In that case it appears that the estimate and apportionment was made and signed by the city engineer, and by Burns &

McDonnell, an outside firm of engineers employed by the city, but filed and considered as the act of the city engineer. The city had agreed to pay Burns & McDonnell for their services five per cent of the cost of construction. The opinion simply held, without discussion or the citation of any authorities, that this amount should not be added to the cost and included in the tax bills. Obviously that is not this case.

The weight of authority favors the course here undertaken by the city. It is thus stated in Parsons v. City of Worcester, 125 N. E. (Mass.) 205, l. c. 206:

"Undoubtedly the mayor and aldermen could include as proper items of the cost of construction such incidental expenses as engineering and clerk hire, necessary for the performance of the work. In our opinion there is no reason in principle for excluding these items merely because the city employed the men to attend to this and other similar work. In view of the finding for the defendant, we assume that the 'other ordinary and usual overhead expenses of the sewer department' included in the cost, embrace only necessary expenses actually connected with these particular sewers, and such as unquestionably would be proper elements of the cost of construction if employed and provided for this work alone. Where the actual time devoted by these employees to the work in question is determined, the proportion which the time so spent bears to the whole time from which these employees are paid can be easily computed. The weight of authority seems to be in favor of this view. [In re Petition of Lowden, 89 N. Y. 548; Gibson v. City of Chicago, 22 Ill. 566; Burns v. City of Duluth, 96 Minn. 104, 104 N. W. 714; Stow v. Kingston, 39 App. Div. 80, 56 N. Y. Supp. 606. Contra, see Longworth v. City of Cincinnati, 34 Ohio St. 101. And see Smith v. City of Portland, 25 Ore. 297, 35 Pac. 665.]"

Respondent cites no authorities in support of his third contention, which is that appellants are without authority to levy a charge of six per cent for engineering and inspection because it is based on an estimate of the probable cost of these services made in advance of their performance. We find no merit in this contention. As said in City of Tulsa v. Weston, 229 Pac. (Okla.) l. c. 124:

"This ordinance is nothing more than a legislative determination of the reasonable amount to be charged for such services, and the same must be held, in the absence of a definite showing to the contrary, that it was the necessary sum to reimburse the city for the cost of the engineer's services paid out."

Also, in McGilvery v. Lewiston, 13 Idaho, l. c. 357:

"The fact that the contract for this service was made in advance of the creation of the district is not a valid objection to the charge. It was necessary to determine what lots and parcels of land should

be properly included within the district and could be drained by a sewer system therein before the creation of the district.''

As we view the case defendants' answer stated a defense to plaintiff's petition which should have been heard on the merits. The judgment of the trial court is, therefore, reversed and the cause remanded. All concur, except *Graves, J.,* who concurs in the result only.