George KELLER, et al., Respondents,

v.

MARION COUNTY AMBULANCE
DISTRICT, et al., Appellant.

No. 72979.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1991.

Rehearing Denied Jan. 28, 1992.

John Morthland, Hannibal, for appellant.

John E. Bardgett, Charles S. Kramer, St. Louis, for amicus curiae Mo. Assn. of Comm. Jr. Coll. & Jr. Coll. Districts.

Brandon L. Wood, Harry J. Mitchell, Palmyra, for respondents.

BENTON, Judge.

On November 4, 1980, the people of Missouri adopted an amendment, popularly known as the Hancock Amendment, to the Missouri Constitution.[1] With the passage of this amendment, the people limited the power to raise taxes that they had traditionally given the governments of Missouri. Since that time, the courts of this state have frequently been called upon to clarify the resulting new relationships between the people, the state, and local governments.[2] This Court, once again, undertakes this crucial task.

Appellant, Marion County Ambulance District ("the District"), was organized in 1974 in accordance with the Ambulance

---

1. Mo. Const., Art. X, §§ 16–24.

2. See, e.g., Zahner v. City of Perryville, 813 S.W.2d 855 (Mo. banc 1991); Tax Increment Financing Com'n v. J.E. Dunn Construction Co., Inc., 781 S.W.2d 70 (Mo. banc 1989); Scholle v. Carrollton R-VII School District, 771 S.W.2d 336 (Mo. banc 1989); Missouri Municipal League v. Brunner, 740 S.W.2d 957 (Mo. banc. 1987); Tannenbaum v. City of Richmond Heights, 704

S.W.2d 227 (Mo. banc 1986); Pace v. City of Hannibal, 680 S.W.2d 944 (Mo. banc 1984); Wenzlaff v. Lawton, 653 S.W.2d 215 (Mo. banc 1983); Buechner v. Bond, 650 S.W.2d 611 (Mo. banc 1983); Roberts v. McNary, 636 S.W.2d 332 (Mo. banc 1982); Oswald v. City of Blue Springs, 635 S.W.2d 332 (Mo. banc 1982); Boone County Court v. State, 631 S.W.2d 321 (Mo. banc 1982); Buchanan v. Kirkpatrick, 615 S.W.2d 6 (Mo. banc 1981); State ex rel. City of Springfield v.

District Law, §§ 190.005–190.085 RSMo 1986. In 1986, the voters of the District approved, as required by the Hancock Amendment, doubling the property tax rate. At the time the 1986 tax increase passed, the District was in a poor financial condition. By January 1989, this problem had been reversed; the District was in strong financial condition. In January 1989, the District established a new schedule of charges, effective February 1, 1989, for its services. As with the previous charges, these charges were for actual services rendered, rather than a subscriber charge of all consumers in the service area. Most of these charges were increases over the previous charges, and none were submitted to the voters for approval. In addition, according to the circuit court, these increases were not needed to maintain the level of service in the District. Respondents—a group of taxpayers who live in the District—sued as a class claiming that these increases violated Article X, § 22(a) of the Missouri Constitution. The circuit court held that these charges qualified as "fees" as that term is used in § 22(a) and, as such, the increases are invalid. On appeal, the District contends that the circuit court's interpretation of the Hancock Amendment is erroneous. This Court agrees that the circuit court's interpretation is in error. The decision below is reversed, and the case is remanded.

Respondent taxpayers rely on the language of § 22(a) which provides: "Counties and other political subdivisions are hereby prohibited ... from increasing the current levy of an existing tax, license or fees ... without the approval of the required majority of the qualified voters of that ... political subdivision voting thereon." Respondents argue that the term "fees" includes the District's charges described above.

■ The fundamental purpose of constitutional construction is to give effect to the intent of the voters who adopted the Amendment. *Boone County Court v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982). Traditional rules of construction dictate looking at words in the context of both the particular provision in which they are located and the entire amendment in which the provision is located. *See McDermott v. Nations,* 580 S.W.2d 249, 253 (Mo. banc) ("The meaning of a term must be determined from the context in which it is used and from the intention of its draftsmen.") *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138, *cert. dismissed,* 444 U.S. 958, 100 S.Ct. 441, 62 L.Ed.2d 331 (1979).

Context determines meaning. Consider this sentence: The batter flew out. Without knowing context, one cannot determine whether that sentence describes what happened when the cook tripped while carrying a bowl of cake mix, or the final act of a baseball game.

Article X, § 16 of the Missouri Constitution is the introductory and principal clause of the Hancock Amendment. It declares that "property taxes and other local taxes and state taxes and spending" cannot be increased without voter approval in accordance with the Missouri Constitution. Section 16 explicitly declares that the remaining provisions of the Amendment are "implementation" of section 16. Appellant District claims that the "spending" referenced in section 16 is only state spending while respondent taxpayers claim that it refers to both state and local spending. If the respondents were correct, then the terms of section 16 bolster the concept that § 22(a) is designed to place a limit on *all* revenue increases by local governments.

■ The remainder of the Amendment, however, supports the appellants' claim that the spending limit applies only to the state. Spending—in the context of total revenue—is mentioned in only four other sections. In two of the four, §§ 19 and 20, only state spending is mentioned. In the other two, §§ 18(d) and 21, local expenditures are relevant only if the state mandates new spending at the local level by either statute or constitutional amendment.

*Public Service Com'n,* 812 S.W.2d 827 (Mo.App. 1991); *St. Louis County v. Hanne,* 761 S.W.2d 697 (Mo.App.1988); *Loving v. City of St. Joseph,* 753 S.W.2d 49 (Mo.App.1988).

*See Boone County Court v. State*, 631 S.W.2d 321, 326 (Mo. banc 1982) ("This [Hancock] Amendment contains no limit on the level of spending by county or local governments."). Thus, not all revenue increases by local governments are subject to the Hancock Amendment. *See Zahner v. City of Perryville*, 813 S.W.2d 855 (Mo. banc 1991) (special assessment for street work not subject to Hancock Amendment); *Oswald v. City of Blue Springs*, 635 S.W.2d 332 (Mo. banc 1982) (utility charges for operation and maintenance of sewer plant not subject to Hancock Amendment). These cases make it clear that there are two types of local revenue increases: those subject to the Hancock Amendment and those not subject to the Amendment.

■ The question becomes which revenue increases are subject to the Hancock Amendment. "License" and "fees" are mentioned in connection with revenue twice in the Amendment. The first time, in § 17(1), they are mentioned as part of the definition of total state revenue, and as alternatives to "general and special revenues." The second time, in § 22(a), "license" and "fees" are mentioned as alternatives to a "tax" in the list of prohibited increases by localities.[3] The difference between these two sections implies a narrower definition for the term "fees" in § 22(a). If the people of Missouri intended to prohibit localities from increasing *any* source of revenue without voter approval, a general term like "revenue" or "revenue in-

crease" could have been used. Instead, the people of Missouri characterized "fees" in § 22(a) as an alternative to a "tax." This characterization suggests that what is prohibited are fee increases that are taxes in everything but name.[4] What is allowed are fee increases which are "general and special revenues" but not a "tax."

Additional support for this interpretation comes from the language of § 22 which prohibits "levying" or "increasing the current levy of" a "tax, license or fees." In ordinary usage, a tax is levied, but a fee is charged. *See* Webster's Third New International Dictionary 1301 (Unabr. ed. 1961); *see also* Black's Law Dictionary 907 (6th ed. 1990). Reading "levy" in this ordinary sense—as a term related to the power of government to impose a tax—it is clear that a "fee" can only be levied if the "fee" is actually a tax. This reading of the term "levy" is consistent with the remainder of § 22, which deals with alterations in the "levy" of various taxes when revenue from the items subject to the Hancock Amendment increases faster than the rate of inflation.

Respondent taxpayers argue that there is no difference between a "true" user fee and a nominal fee that is really a tax.[5] Just months ago, this Court restated its traditional distinction between "true" user fees and taxes denominated as fees:

> Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connec-

---

**3.** *Compare* "'Total state revenues' includes all general and special revenues, license and fees...." Mo. Const. Art. X, § 17(1); *with* "Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees...." Mo. Const. Art. X, § 22(a).

**4.** In fact, the drafter's notes on § 22 emphasize that the purpose of the relevant sentence was to prohibit the levy of new taxes or increasing the rate of an existing tax. *See Drafters' Notes—Tax Limitation Amendment* at 7, included in the record on appeal in *Roberts v. McNary*, 636 S.W.2d 332 (Mo. banc 1982). *See generally id.* at 7–10. For further reasons why the Hancock Amendment is only concerned about the "taxing" power of local governments, see R. Thomas, *The Hancock Amendment: The Limits Imposed on Local Governments*, 52 U.M.K.C.L.Rev. 22, 31–32 n. 28 (1983).

**5.** The respondents do, however, have a point that how the General Assembly or another governmental entity describes a charge does not determine whether it is subject to the Hancock Amendment. *See Zahner v. City of Perryville*, 813 S.W.2d 855, 858 (Mo. banc 1991). In fact, the General Assembly in giving different types of special districts the power to charge users for services and consumers for goods has used various terms to describe the charges. *E.g.*, "tuition fees," §§ 167.141, 178.850 RSMo 1986; "admissions and fees," § 184.351.4 RSMo 1986; "charge," §§ 184.362, 205.989.2 RSMo 1986; "fees and compensation," §§ 190.060.1(4), 198.300.1(4), 206.110.1(4) RSMo 1986; "rates and charges," § 247.050(14) RSMo 1986; "fees," § 257.200(8) RSMo 1986; "rents, rates, or other compensation," § 305.310.1 RSMo 1986. There are even statutes that either do not name the charge or merely imply the power to charge. *E.g.*, §§ 71.796, 167.211, 205.042.3, RSMo 1986.

tion with a specific purpose ordinarily are not taxes ... unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures ... rather than compensation of public officers for particular services rendered....

Zahner v. City of Perryville, 813 S.W.2d 855, 859 (Mo. banc. 1991), citing Roberts v. McNary, 636 S.W.2d 332, 336 (Mo. banc. 1982), citing Craig v. City of Macon, 543 S.W.2d 772, 774 (Mo. banc 1976) (omitting citations), citing Leggett v. Missouri State Insurance Company, 342 S.W.2d 833, 875 (Mo. banc 1960). In addition, the history and logic of the Hancock Amendment leads this Court to reject the contention that all fees—whether user fees or tax-fees—are subject to the Hancock Amendment.

Since the Great Depression, there has been a trend toward special districts or "quasi-governmental organizations." [6] While accomplishing noble purposes, each new district necessitates additional taxes for its operation. While some statutes give the people control over the tax rates of some of these organizations, the Hancock Amendment created a constitutional basis to control the tax rates of *all* these organizations. The Hancock Amendment, in order to keep the public burden of taxation under control, does not prohibit these organizations from shifting the burden to the private users of these services.[7] How much to charge users is for those elected to run the organizations.[8] If the decisions are unpopular, the directors may be voted out of office.[9] The only requirement placed on the directors by the Hancock Amendment is that any increase in taxes must be approved by the voters.[10]

The case of Roberts v. McNary, 636 S.W.2d 332, 336 (Mo. banc 1982), suggests that *all* revenue increases, including "fee"

---

**6.** These are organizations set up by governments to fulfill purposes inadequately served by private organizations. In addition to ambulance districts, other special districts with the power to tax and to charge for goods and/or services include community mental health services, conservancy districts, county airport authorities, county health centers, county library districts, hospital districts, junior college districts, metropolitan park and museum districts, nursing home districts, public water supply districts, school districts, and special business districts.

**7.** The Hancock Amendment does not require that a greater portion of the burden be placed on the users of these organizations. In the case of ambulance districts, the record below shows that the property tax revenue assures minimal ambulance service in rural areas of the state. In addition, the record shows that many of the users cannot afford increases in these fees.

**8.** The drafters' notes specifically state that it was not the intent of the drafting committee "to include user charges that are specific charges for services rendered" among the items covered by § 22. *Drafters' Notes—Tax Limitation Amendment* at 10.

**9.** The directors of the District have the power to set "reasonable fees" for the services provided. § 190.060.1(4) RSMo 1986. The directors are elected from single member districts and serve three-year terms. § 190.050.1 RSMo Supp.1990.

**10.** In order to determine whether a revenue increase by a local government is an increase in a "tax, license or fees" that requires voter approval under the Hancock Amendment, the following are critical:

1) When is the fee paid?—Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee.

2) Who pays the fee?—A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged.

3) Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?—Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer.

4) Is the government providing a service or good?—If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

5) Has the activity historically and exclusively been provided by the government?—If the

increases, are subject to the Hancock Amendment. To the extent that this language constitutes the holding of *Roberts*, it has been overruled by this Court *sub silentio* in several cases. *See Zahner v. City of Perryville*, 813 S.W.2d 855 (Mo. banc 1991); *Tax Increment Financing Comm'n v. J.E. Dunn Construction Co., Inc.*, 781 S.W.2d 70 (Mo. banc 1989); *Pace v. City of Hannibal*, 680 S.W.2d 944 (Mo. banc 1984); *cf. Oswald v. City of Blue Springs*, 635 S.W.2d 332 (Mo. banc 1982). Nor is *Roberts* of much help. *Roberts* lifts the word "fees" from its constitutional context, and attempts to define "fees" as though it stood alone. The result of this error is that *Roberts* speaks far too broadly to be of much use as precedent.[11] The phrase "license or fees" in § 22 indicates an intent to prevent political subdivisions from circumventing the Hancock Amendment by labeling a tax increase as a license or fee. *Cf.* R. Thomas, *Recent Developments in Missouri: Local Government Taxation*, 49 UMKC L.Rev. 491, 498–505 (1981). This language requires courts to examine the substance of a charge, in accordance with this opinion, to determine if it is a tax without regard to the label of the charge. *Cf. Zahner*, 813 S.W.2d at 858. To the extent that *Roberts* is inconsistent with this opinion, it is overruled.

Therefore, this Court holds that increases in the specific charges for services actually provided by an ambulance district are not subject to the Hancock Amendment.

The judgment of the circuit court is reversed, and the case is remanded with orders to enter judgment for the appellants.

ROBERTSON, C.J., and BLACKMAR, and THOMAS, JJ., concur.

government has historically and exclusively provided the good, service, permission or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically and exclusively provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

Based on these criteria, property taxes, sales taxes, franchise taxes, and income taxes, among others, are subject to the Hancock Amendment. *See Wenzlaff v. Lawton*, 653 S.W.2d 215, 217 (Mo. banc 1983); *Goode v. Bond*, 652 S.W.2d 98 (Mo. banc 1983). The above criteria are helpful

HOLSTEIN, J., dissents in separate opinion filed.

RENDLEN and COVINGTON, JJ., dissent and concur in dissenting opinion of HOLSTEIN, J.

HOLSTEIN, Judge, dissenting.

I respectfully dissent.

The majority opinion reaches the remarkable conclusion that the word "fees" used in Missouri Constitution article X, § 22(a) does not mean "fees." In reaching that conclusion, it leaps across the primary principles for determining the meaning of constitutional language and relies on secondary rules of construction and "legislative history" to support its result. The majority seeks to avoid direct precedent construing the same constitutional provision now at issue, declaring both the rationale and result of that precedent to have been overruled previously. More importantly, the majority nullifies the express intent of the voters who adopted the provision.

The pertinent provisions of article X, § 22(a) state:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees not authorized by law ... or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law ... without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

The majority undertakes to construe § 22(a) by "looking at words in the context

in examining charges denominated as something other than a tax. No specific criterion is independently controlling; but, rather, the criteria together determine whether the charge is closer to being a "true" user fee or a tax denominated as a fee.

11. *Buechner v. Bond*, 650 S.W.2d 611 (Mo. banc 1983), partakes of the same error of reasoning, lifting the word "revenues" for the constitutional phrase "total state revenues" to interpret the Hancock Amendment in the most government-constricting manner possible.

of both the particular provision in which they are located and the entire amendment in which the provision is located." The majority cites *Boone Co. Court v. State*, 631 S.W.2d 321 (Mo. banc 1982), and *McDermott v. Nations*, 580 S.W.2d 249 (Mo. banc 1979), as authority for its rule of construction. Those precise words, or words approximating those words, are not found in *Boone Co. Court*. *McDermott* supports the notion that the meaning of a word is explained by the context in which it occurs. However, neither *McDermott* nor *Boone Co. Court* go so far as to say that the rule regarding contextual construction would deprive a word in the Constitution of any known dictionary meaning. Strangely, the majority overlooks the more fundamental principles in *Boone Co. Court* regarding the meaning of words in the Constitution. Indeed, it is puzzling that the majority relies on that case at all.

In *Boone Co. Court* the Court articulated the general rules applicable to construction of the Constitution. The Court noted that the same rules applicable to construction of statutes are applicable to construction of the Constitution, except the Constitution is construed more broadly due to its more permanent character. Here the majority construes the term "fees" so narrowly that it has no comprehensible, independent meaning. In *Boone Co. Court*, this Court stated that the *first* rule in determining the meaning of a constitutional provision is to ascribe to words the meaning that the people understood them to have meant when the provision was adopted. The meaning conveyed to voters is presumptively equated with the ordinary and usual meaning which is, in turn, derived from the dictionary. *Boone Co. Court*, 631 S.W.2d at 324. By contrast, the majority here makes no attempt to examine the word "fees" to give it the commonly understood, dictionary meaning.

*Boone Co. Court* also noted other rules of construction. For example, grammatical order and selection of associated words is also indicative of the natural significance of the words employed and due regard is given to the primary objectives of the provision "as viewed in harmony with all related provisions." These rules are resorted to where a word is ambiguous or where two provisions are apparently at odds and in need of "harmony." When harmonizing constitutional provisions, the Court is to render every word operative so as to give effect to the whole. *State ex rel. Crutcher v. Koeln*, 332 Mo. 1229, 61 S.W.2d 750, 755 (banc 1933). Where related provisions and associated words are not in conflict there is no necessity to harmonize them. *State ex rel. Martin v. City of Independence*, 518 S.W.2d 63, 66 (Mo.1974).

In this case the majority has failed to point out in what way the word "fees" is ambiguous. The majority opinion does not find the word "fees" to be confusing. Instead, it finds other words and phrases associated with "fees" to be imprecise or confusing. Rather than "fees" explaining the less precise words with which it is associated, the majority uses those imprecise words to obfuscate the plain meaning of the word "fees." Indeed, the majority uses that as justification to empty the word "fees" of any meaning and redefine it as "taxes." That definition is foreign to any dictionary meaning of the word. To give the word "fees" the same meaning as the word "taxes" requires engaging in the subleties of a logical exercise not comprehensible to persons of ordinary understanding. If the words "taxes," "licenses" and "fees" were intended to have the same meaning, the use of only one of them would have sufficed and the others would have been surplusage included for no reason at all. Such a construction is not favored. *Boone Co. Court v. State*, 631 S.W.2d at 325; *Rathjen v. Reorganized School Dist. R–II of Shelby Co.*, 365 Mo. 518, 284 S.W.2d 516, 523 (banc 1955).

Some other well established principles transcend mere rules of construction. The rules of construction are not to be resorted to where a constitutional provision is clear and unambiguous. *E.B. Jones Motor Co. v. Industrial Comm'n*, 298 S.W.2d 407, 410 (Mo.1957). Constitutions are not designed for metaphysical or logical subtleties or for niceties of expression, for critical propriety, for elaborate shades of

meaning, or for the exercise of philo-sophical acuteness or judicial research; but they are instruments of a practical nature to be given a common sense construction. *State v. Adkins*, 284 Mo. 680, 225 S.W. 981, 984 (Mo.1920); *J. Story on the Constitution*, vol. 1, § 451, p. 345 (5th ed. 1891). The meaning apparent on the face of the constitution is controlling and no forced or unnatural construction is permissible. *Wenzlaff v. Lawton*, 653 S.W.2d 215, 216 (Mo. banc 1983); *State ex rel. Heimberger v. Bd. of Curators of Univ. of Missouri*, 268 Mo. 598, 188 S.W. 128 (banc 1916). In sum, courts are not to rummage among the canons of construction in order to create ambiguity and confusion where none exists. The majority avoids these first principles applicable in determining the meaning of words found in the Constitution.

The majority argues that the use of the word "levying" is confusing when used in conjunction with the word "fees" because, in ordinary usage, taxes are levied, while a fee is charged. The argument is flawed.

The notion that "fees are not levied" is an exercise in wishful thinking. Since before the adoption of the United States Constitution, the word "levy" has been used in conjunction with words other than "taxes" in a state constitution to prohibit raising revenue without approval of the people.[1] Case law is rich with examples in which "fees" were "levied." *See e.g. Carpenter v. King*, 679 S.W.2d 866, 867 (Mo. banc 1984); *Concerned Parents v. Caruthersville School District*, 548 S.W.2d 554, 561 (Mo. banc 1977); *Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355, 362 (Mo.1960); *Fetter v. City of Richmond*, 346 Mo. 431, 142 S.W.2d 6, 8 (Mo. 1940); *Ploch v. City of St. Louis*, 345 Mo. 1069, 138 S.W.2d 1020, 1023 (Mo. banc 1940); *Ward Baking Co. v. City of Ste. Genevieve*, 342 Mo. 1011, 119 S.W.2d 292, 293 (Mo.1938); *City of Kansas City v. J.I. Case Threshing Mach. Co.*, 337 Mo. 913, 87 S.W.2d 195, 204 (Mo.1935); *Pflueger v. Kinsey*, 320 Mo. 82, 6 S.W.2d 604, 605 (Mo. banc 1928); *Julian v. City of Liberty*, 427

S.W.2d 300, 301 (Mo.App.1968). While this list exclusively consists of Missouri cases, numerous examples could be cited from other jurisdictions.

The dictionary meaning of the verb "levy," relied on by the majority, includes "to impose or collect ... to exact or require." Among the meanings of the noun "levy" is "an assessment ... an amount levied." *Webster's Third New International Dictionary* 1301 (unabr. ed. 1966). Similarly, the verb "charge" in the present context means "to impose a pecuniary burden on." *Webster's Third New International Dictionary* 377. Thus, "levying" a fee and "charging" a fee are synonymous. Both mean nothing more complex than imposing a fee. Common sense and the context of § 22(a) dictate that those meanings of the word "levying" and "levy" are applicable here. The ambulance district, by imposing or exacting fees without voter approval, is "levying" fees in violation of the Constitution. The adoption of the narrow and strained definition of "levying" relied on by the majority not only has the effect of creating ambiguity where none exists, but worse, it excises the word "fees" from the Constitution. As previously noted, each word must be rendered operative so as to give effect to the whole provision under consideration. The majority's example of "the batter flew out" bears no resemblance to the clear and plain meaning of the words as used in the context of § 22(a), and simply illustrates the contrivance required to circumvent the meaning.

The majority also fails to follow direct precedent. In *Roberts v. McNary*, 636 S.W.2d 332 (Mo. banc 1982), this Court enjoined the collection of increased fees for numerous county services provided by St. Louis County, including parks and building inspections. This Court applied the "ordinary and customary meaning" standard and, resorting to a standard dictionary, defined "fees" as "A fixed charge for admission; a charge fixed by law or by an institution for certain privileges or services; a

---

1. "No subsidy, charge, tax, impost, or duties ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the con-sent of the people...." *Massachusetts Constitution of 1780*, pt. 1, art. XXI.

charge fixed by law for services of a public officer." *Id.* at 335.

The *Roberts* court found no need to resort to the rules of construction beyond the plain and ordinary meaning.

Reading the words examined here [of § 22(a)] for their ordinary and customary meanings, they present a sweeping list of the types of pecuniary charges a government makes. Quite simply, this exhibits an intent to control any such charges to the extent that the voters must approve any increase in them.

*Id.* at 336.

*Roberts* also considered the argument that "user" fees are not germane to the purposes of the Hancock Amendment. The Court noted that the purpose of the amendment is to limit government taxes and expenditures. The Court concluded that a restriction on fees was connected to that purpose. *Id.* at 337.

The majority's claim that *Roberts* has been overruled *sub silentio*[2] by certain cases is not accurate. The cases relied on by the majority are anything but silent regarding *Roberts. Zahner v. City of Perryville,* 813 S.W.2d 855 (Mo. banc 1991), cited *Roberts* with approval in defining "fees" and concluded that the dictionary definition of "fees" did not include special assessments charged for street improvements to abutting landowners because those owners were not provided with a "privilege" or "service." 813 S.W.2d at 858. In *Tax Increment Finance Comm'n v. J.E. Dunn Construction Co.,* 781 S.W.2d 70 (Mo. banc 1989), this Court addressed the issue of whether payments in lieu of abated taxes (PILOTS) on property in blighted areas that had been redeveloped were taxes. This Court again relied on *Roberts* for its dictionary definition of "taxes." In concluding that PILOTS were not taxes, but special assessments for improvements on the owners' property at public expense, this Court cited *Roberts* with approval and noted that the word " 'tax' bears a more narrow meaning than 'tax, license and fees.' " *Id.* at 76–77. *Pace v.*

*City of Hannibal,* 680 S.W.2d 944 (Mo. banc 1984), also relied on *Roberts.* In that case the city utility board had made voluntary payments into the city general revenue, said to be made "in lieu of franchise tax." The Court noted no similarity between the user fees in *Roberts* and the voluntary payments. The Court concluded that holding the voluntary payment to be a license, tax or fee would enlarge upon the plain language of article X, § 22(a), contrary to the teaching of *Roberts. Id.* at 948. The final case relied on, *Oswald v. City of Blue Springs,* 635 S.W.2d 332 (Mo. banc 1982), made no mention of *Roberts* and with good reason. There, while the plaintiff claimed that a city rate increase for water and sewer service had not been approved by voters, the plaintiff's petition admitted that the voters of the city had approved a revenue bond proposal authorizing the city to raise water and sewer rates to pay the bonds. Because the bond issue had been submitted to and approved by voters, the Court found it unnecessary to determine "... whether the rates charged for water and sewerage services constitute[d] a tax, license or fee." *Id.* at 333. The necessary voter approval was found to have occurred.

If the majority chooses to overrule *Roberts* it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio.* Is there a flaw in the rationale of *Roberts?* Is the plain meaning of words no longer the standard by which we judge the meaning of words in the Constitution? If so, call the error by name and cut it out. But if there is no error in reasoning, the Court should stand on its precedent.

The majority finds that user fees, characterized as "true user fees," are not related to the Hancock Amendment's purpose. The majority finds no purpose to limit local expenditures or revenues, only to limit local taxes. That innovative concept is inconsistent with the repeated prior declarations of this Court, that the purpose of the Hancock Amendment was to limit taxes by

---

**2.** *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New International Dictionary* 2279.

establishing tax limits and revenue limits and expenditure limits for the state and other political subdivisions. *Buechner v. Bond,* 650 S.W.2d 611, 613 (Mo. banc 1983); *Roberts,* 636 S.W.2d at 337; *Boone Co. Court,* 631 S.W.2d at 325; *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 13 (Mo. banc 1981). By limiting tax, fee and license increases it naturally follows that the revenue of political subdivisions will be limited. By limiting revenues, expenditures are necessarily limited. The case precedent is uniform in declaring that limiting state and local spending is one purpose of the Hancock Amendment. Is the majority intending to overrule that aspect of *Buechner, Boone Co. Court* and *Buchanan,* as well as *Roberts?* If so, it is better to do so directly.

Also puzzling is the majority's finding that the words "fees," as used in article X, § 17(1), has a different meaning than the same word used in article X, § 22(a). The majority bases this conclusion on its reading of article X, § 16. That reading is apparently inspired by a footnote in a law review article and the so-called "Drafters' Notes" of the Hancock Amendment. The "Drafters' Notes" are not part of this record.

The "Drafters' Notes" could not have been circulated among those who signed the initiative petition because those notes were dated months after the initiative petition had been circulated and submitted to the Secretary of State to be placed on the ballot. There is nothing to suggest that the "Drafters' Notes" were ever communicated to the voters. The notes were not part of the ballot title. The particular note relied on by the majority admits that it was written "in retrospect." *Drafters' Notes,* p. 72.

Even if one considers the "Drafters' Notes" as authoritative, they create as much ambiguity as they resolve. At the beginning of the notes, referring to article X, § 16, the drafters state:

> [T]he objective, purposes and intent of the drafters ... [is] to place specifically

defined limitations on both state and local governmental units ...

It is also clear from the remaining sections that "limitations specified herein" means tax and revenue levels existing at the effective dates of the Amendment.

. . . .

In essence, the drafters' intent was to place the total dollar size of Missouri's public sector under direct democracy. . . .

*Drafters' notes* pp. 63–64. If the drafters' essential intent was to limit "tax and revenue levels" and restrict the "total dollar size" of the public sector, certainly restraints on local government fees and licenses advances that purpose.

In a footnote to a law review article, the decision in *Roberts* was roundly criticized for failing to give adequate consideration to "legislative history and rules of statutory construction." R. Thomas, *The Hancock Amendment: The Limits on Local Governments,* 52 UMKC L.Rev. 22, 31–32, n. 28 (1983). As previously noted, the majority seems to adopt the footnote's rationale. The article, like the majority opinion, fails to identify the ambiguity in the word "fees" that justifies resort to rules of construction or "legislative history." [3]

Among the arguments raised in the law review article is the claim that § 16 does not place limits on local government other than limits on increased taxes and, since § 22(a) implements § 16, "fees" has a very limited meaning. The flaw in the argument is the assumption that § 16 clearly does not place limits on local government other than limits on taxes. If ambiguity exists it is not found in § 22(a) but in § 16. Section 16 states, "Property taxes and other local taxes and state taxation and spending may not be increased" except as provided in the Constitution. Whether "spending" relates only to the state or applies to both state and local government, is not clear. That ambiguity is made clear by § 22(a), which forbids increases in taxes, licenses or fees by political subdivisions without voter approval. Applying standard rules of statutory construction, the specific

---

3. Constitutional provisions originated by initiative petition have no legislative history. Presumably the author of the footnote was referring to the "Drafters' Notes."

provisions of § 22(a) prevail over the general provisions of § 16. *State ex rel. Osborne v. Goeke*, 806 S.W.2d 670, 672 (Mo. banc 1991). Other arguments posed in the law review article are disingenuous efforts to avoid the plain meaning of the words in the Constitution. It is highly unlikely the voters engaged in the erudite gymnastics necessary to construe § 16 as a limit on the meaning of the word "fees" in § 22(a). The Constitution is not a document belonging to scholars. It is a document of the people.

In the final analysis, the drafters' intent is irrelevant. The material inquiry is, after all, not what the drafters meant to say, but what the drafters made manifest to the voters and what the voters intended. The ballot title of the Hancock Amendment specifically informed voters that the amendment "prohibits local tax or fee increases without a popular vote." *Roberts*, 636 S.W.2d at 336; *Buchanan*, 615 S.W.2d at 13. The meaning apparent on the face of the amendment is controlling, and no forced or unnatural construction is permissible. *Wenzlaff*, 653 S.W.2d at 216; *Buechner*, 650 S.W.2d 611, 613 (Mo. banc 1983).

The majority states that the Hancock Amendment does not prohibit shifting the burden of public services to users and leaves user fees to those elected to run political subdivisions. As a matter of policy, that is certainly attractive. But that is not what the voters said when they adopted the Hancock Amendment. Without restriction, they prohibited increases in fees by political subdivisions without voter approval.

In addition, requiring voter approval of user fees is not necessarily a bad policy. The facts in this case are a stark example of how onerous unrestrained user fees can be. The trial court found and the record reflects that when the fee increases at issue were adopted, the ambulance district was in the best financial condition of its history. In an ill disguised display of bureaucratic avarice, user fees were increased one hundred percent. The board unjustifiably contended the fee increases were necessary to put the district on a "profitable" basis, to improve services and to maximize payments from private insurance and public medical coverage providers. To the contrary, the trial court found no proven need to increase fees to maintain the service. This case is a remarkable example of the type of governmental action by a "political subdivision" which the Hancock Amendment is designed to curb. To suggest otherwise defies logic and thwarts the will of the people.

The voters, by adopting restrictions on fees, may well have been concerned about the symbiotic relationship that exists between the board of a political subdivision and the staff of a political subdivision. That relationship makes it difficult for board members to resist the entreaties of the staff to increase fees. That is particularly true in cases like this, where the burden of fee increases will fall on relatively few or on private or public insurance programs and may go unnoticed by the majority of the voters. In this case the only ones who suffer the direct impact of increased user fees are the truly unfortunate few who need ambulance services but are covered by neither public nor private health insurance. It is reasonable to believe the voters who adopted the Hancock Amendment intended to prevent self-serving public boards and self-serving public employees of tax supported entities from increasing fees in such a way as to place critical services beyond the reach of persons of ordinary means.

The majority has rejected the plain meaning of the word "fees" and adopted a litany of criteria, no one of which is controlling, to assist in distinguishing "true" fees from taxes that are only "nominal" fees. By footnote, the majority assures continued uncertainty and expensive, protracted litigation as political subdivisions and taxpayers struggle to sort out prohibited fees from unprohibited fees. If a charge meets one or two of the criteria to be characterized as a tax, but not the others, is it a tax or a fee? The majority does not say. By failing to clearly define "fees," the majority has created a moving target. The subleties and nuances that distinguish "true"

fees from "nominal" fees will give rise to repeated lawsuits, perhaps allowing different courts to reach different results under similar facts.

Curiously, the majority has failed to analyze this case by its criteria found in footnote 10 of its opinion. The inclusion of the fifth criterion is especially odd. That criterion has nothing to do with whether the charge more closely resembles a tax or a fee. Instead, it would characterize a charge that is related to an activity that is historically and exclusively governmental as a tax. What are these activities? Certainly public health and safety, education, parks and roads are traditionally and exclusively governmental activities. Ambulance service is a critical aspect of public health and safety and is at least as essential as police and fire protection. Since 1975, ambulance service in Marion County and most of rural Missouri has been "historically and exclusively" performed by government. At least two, and perhaps more, of the majority's criteria have been met, indicating this increase is subject to the Hancock Amendment.

The majority admits that the Hancock Amendment prohibits some revenue increases by political subdivisions without voter approval. Article X, § 22(a) describes those that are prohibited with specificity, i.e., taxes, licenses and fees. To deny those words their ordinary meaning is to thwart the intent and will of the people from whom all constitutional authority is derived. Judges are not philosopher kings, free to do what we consider good and wise. We are servants of a sovereign people, restrained by a Constitution of the people's making. To nullify a vital word endangers the entire constitutional fabric upon which we all rely.

Notwithstanding my high regard for the opinion of my fellow judges, I dissent. I would affirm the trial court in sustaining the plaintiffs' challenges to the increased fees.