**CITY OF WEBSTER GROVES,**
Plaintiff–Respondent,

v.

**Donald L. ERICKSON,**
Defendant–Appellant.

No. 54637.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 11, 1989.

Application to Transfer Denied
Feb. 14, 1989.

Donald L. Erickson, Webster Groves, pro se.

David L. Coffman, St. Louis, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals from his conviction by the court for violating public nuisance ordinances of the City of Webster Groves.[1] He was fined $300.00. We affirm.

The ordinances which apply to public nuisances are codified in Chapter 31 of the ordinances of the City of Webster Groves. Section 31.080 provides:

> The owner of any premises, or his agent in control thereof, as well as the tenant or occupant of such premises, is charged with the duty of observing all of the provisions of this Chapter. Any or all of such persons, together with any person causing or contributing to cause any nuisance, may be charged with violation thereof, and shall be equally liable.

Webster Groves, Mo., Code § 31.080 (1987).

Defendant was charged as an owner. On November 1, 1985, defendant and buyers executed a "contract for deed" for

---

1. Defendant had been found in violation by the municipal court and appealed to the circuit court where the case was heard de novo.

property in the City of Webster Groves. Buyers took possession; defendant retained title. City, on December 30, 1986, inspected the property and determined that "broken concrete, tires, cardboard boxes" and other debris on the premises were a public nuisance under its ordinances.[2] On December 30, 1986, City sent a notice of violation to defendant by certified mail, return receipt requested. Defendant received the notice on January 9, 1987. City inspected the premises on January 14, 1987, and found the volume of debris had increased; "[t]here was, additionally, a washer and a dryer, and a considerable amount of auto parts, specifically tail pipes, mufflers, etcetera, scrap iron." Defendant was summoned to appear in municipal court. On the court date, February 19, 1987, City again inspected the premises and determined defendant was violating its public nuisance ordinances.

As his defense at trial and his main point on appeal, defendant argues he is not an "owner" as that word is used in City's public nuisance ordinances. He contends that under *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119 (Mo. banc 1979), and *Fincher v. Miles Homes of Mo., Inc.*, 549 S.W.2d 848 (Mo. banc 1977), the "contract for deed" he and buyers executed made buyers the "true owners" of the premises and left him merely a trustee holding bare legal title.

 When we construe an ordinance we attempt to effect the intent of the lawmakers. In doing so, we give the words used their ordinary meaning, consider the entire act and its purposes, and seek to avoid unjust, absurd, unreasonable, confiscatory or oppressive results. *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266, 271 (Mo. banc 1964).

Ordinance violation actions are quasi-criminal and, on review, we must sustain the judgment of the trial court unless there is no substantial evidence to support it when the evidence and reasonable inferences therefrom are viewed in the light most favorable to the city; we do not weigh the evidence. *St. Louis County v. Ryan*, 738 S.W.2d 951, 952 (Mo.App.1987).

 We believe that "owner" as used in the ordinances includes any owner, legal or equitable, who has the right to control the premises so as to abate the nuisance thereon.

We disagree with defendant's contention that the evidence does not support a finding that he was the owner of the property under the public nuisance ordinances of the City of Webster Groves. The court had before it the "contract for deed." The contract provided for a total purchase price of $49,900.00 and contained the following sale provisions:

[The purchase price to be paid] in the following manner: Five Hundred and Thirteen Dollars and Twenty One Cents ($513.21) paid on execution of this agreement, receipt of which is hereby acknowledged, and the balance, together with interest at the rate of Twelve Percent (12%), to be paid in consecutive monthly installments of Five Hundred and Thirteen Dollars and Twenty One Cents ($513.21) commencing on the Fourth day of December, 1985, and a like amount on the same day of each succeeding month thereafter for Three Hundred and Sixty consecutive months.

... Upon payment of all monthly payments as set forth above, Seller shall deliver to buyer a General Warranty Deed to the above described real property....

....

Buyer and seller agree to execute a General Warranty Deed from Seller to Buyer and a Quit Claim Deed from Buyer to Seller upon execution of this agreement, and that Seller will hold said deeds for and during the life of this agreement. On full and faithful performance of all covenants and conditions by Buyer, Seller will deliver said General Warranty Deed to Buyer. Should any breach of

---

**2.** The record reveals that buyers had been informed of the condition of the premises by City before December 30, 1986.

this agreement by Buyer result in the whole amount then remaining owed Seller becoming immediately due and payable, Buyer will pay said whole amount then remaining owed Seller within Ten (10) days. If Seller fails to pay said whole amount then remaining owed Seller within Ten (10) days, Buyer authorizes and appoints Seller as Buyer's attorney in fact to file for record the Quit Claim Deed from Buyer to Seller.

The contract also contained the following provisions:

Buyer shall save and keep Seller free and harmless from any and all damage and liability occasioned by the use of said premises by any person or persons in any manner.

... Buyer agrees to maintain said premises in good repair, to permit no waste thereof, and to take the same care thereof that a prudent owner would take. If any municipal or governmental authority shall direct certain conditions to be corrected on the premises, it shall be the duty of the Buyer to make such corrections at Buyer's own expense, upon receipt of notice by Buyer. *If Buyer fails to make such repairs, replacements or corrections, Seller shall have the right to do so* and the cost of same shall be added to the principal hereof....

(Emphasis added.)

The record establishes that defendant is the legal owner of the premises. A review of the "contract for deed" leads us to conclude that defendant recognized himself to be an owner and included provisions in the contract to protect himself from the consequences of certain city ordinances relating to the condition of the premises. Defendant had sufficient control of the premises to abate the nuisance. The finding by the trial court that defendant was the owner of the premises at the time of the offenses is supported by substantial evidence, thus his claim he is not an owner is without merit.

■ The conviction is supported by the substantial evidence in the record that a public nuisance was created on premises owned by defendant, that defendant received notice of the ordinance violation from City, and that defendant did not remedy the situation.

Defendant raises various other points on appeal, some of which have been preserved and some which have not. We have considered all of them and find them to be without merit.

JUDGMENT AFFIRMED.

CRANDALL, P.J., and CRIST, J., concur.