**CITY OF BRIDGETON,**
**Plaintiff/Respondent,**

v.

**NORTHWEST CHRYSLER–PLYM-OUTH, INC. d/b/a Don Schunk Chrysler–Plymouth–Jeep, Inc., Defendant/Appellant.**

**No. ED 78252.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 20, 2001.

---

William A. Richter, Michael R. Annis, Blackwell Sanders Peper Martin LLP, St. Louis, MO, for respondent.

Vernon D. Singer, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff, City of Bridgeton (Bridgeton), filed a petition alleging that defendant, Northwest Chrysler–Plymouth, Inc. d/b/a Don Schunk Chrysler–Plymouth–Jeep, Inc. (Schunk) underpaid its merchant license tax from 1994 through 1999 and owed Bridgeton $157,615 in taxes, interest, and penalties. In its response to the petition, Schunk denied that it had unreported gross receipts and alleged, as an affirmative defense, that the merchant license tax ordinance was unenforceable because it had not been put to a vote of the people as required by the Hancock Amendment, art. X, sec. 22(a) of the Missouri Constitution. Bridgeton subsequently filed a motion for summary judgment. The trial court granted the motion and ordered Schunk to pay taxes in the amount of $112,247, interest in the amount of $34,534, and penalties in the amounts of $5,611 and $11,222.

On appeal from the summary judgment, Schunk contends 1) that Bridgeton's merchant license tax is unconstitutional because certain ordinances relating to the tax were enacted without voter approval in violation of the Hancock Amendment and 2) that Bridgeton erroneously calculated Schunk's gross receipts on which its tax liability is based, creating an issue of material fact. We affirm.

## I. *Hancock Amendment*

For its first point Schunk asserts that the trial court erred in entering summary judgment because portions of Chapter 610 of the Bridgeton Code of Ordinances (the Code) increased the amount of the merchant license tax, were enacted without voter approval, and, therefore, are unconstitutional under the Hancock Amendment, Mo Const. art. X, sec. 22(a), which was adopted November 4, 1980. We disagree.

In its summary judgment response, Schunk alleged it was entitled to relief because: "The City of Bridgeton's right to levy the taxes, penalties and interest under Chapter 610 was not put to a vote of the qualified voters of the City of Bridgeton." Schunk relies on that part of art. X, sec. 22(a), which provides:

> Counties and other political subdivisions are hereby prohibited ... from increasing the current levy of an existing tax, license or fees ... without the approval of the required majority of the qualified voters of that ... political subdivision voting thereon.

Chapter 610 of the Code, sections 610.10 et seq., applies to the licensing and taxation of merchants, manufacturers, and service occupations in the City of Bridgeton. It is based on a number of ordinances enacted after 1965. The ordinances which relate to the issues in this point are: 1) Ordinance No. 747, enacted in 1965, which was the ordinance governing Bridgeton's merchant license tax when the Hancock Amendment was adopted in 1980; 2) Ordinance 81–67, adopted on September 16, 1981, which replaced, without submission to the voters, Ordinance 747; 3) Ordinance 84–69, enacted on October 3, 1984, which amended, without submission to the voters, Ordinance 81–67 by inserting the word "and" between two of the three conditions for an exemption from "gross receipts;" and 4) Ordinance 85–109, adopted on December 18, 1985, increasing the tax rate, which increase had been approved by the voters in the November, 1985 general election.

Schunk does not challenge the 1985 voter-approved increase in the tax rate, but argues that certain portions of Chapter 610, which were enacted by Ordinances 81–67 and 84–69 without submission to the voters, violate the Hancock Amendment because they increased or potentially increased the amount of taxes to be paid by itself or other merchants. Schunk contends that Ordinance 81–67 increased Schunk's tax liability because it extended gross receipts to revenue from leases, changed the basis on which estimated tax payments were calculated, and added interest to and changed penalties on delinquent payments. Schunk argues that Ordinance 84–69 also violated the Hancock Amendment because it required that all three, rather than just one, of the listed conditions be present to constitute an exemption from gross receipts.

Schunk's arguments are based on faulty assumptions about the Hancock Amendment and on a misinterpretation of the ordinances in question. As a result, the underlying premises on which its arguments are based are invalid. Further, none of the ordinance provisions on which Schunk relies constituted an increase in a current tax levy which required voter approval under the Hancock Amendment.

■ The portion of Section 22(a) on which Schunk relies prohibits a political subdivision from increasing a current tax levy. The constitution's prohibition is measured against the tax levy. *Tax Increment Fin. Com'n v. J.E. Dunn Const.*, 781 S.W.2d 70, 74 (Mo. banc 1989). Actions which do not increase the levy do not violate the Hancock Amendment even if a particular taxpayer's liability is increased. Further, the levy must be of a tax, or of a license or fee operating as a tax. *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301, 303–05 (Mo. banc 1991). The Hancock Amendment does not require a vote on charges imposed which are not taxes. *Id.*

In connection with taxation, the Missouri Supreme Court has defined "levy" as follows:

> In its proper sense . . . it is the formal and official action of a legislative body invested with the power of taxation . . . whereby it determines and declares that a tax of a certain amount, or of a certain percentage on value, shall be imposed on persons and property subject thereto.

84 C.J.S. *Taxation* § 349 (1954). When it is used in connection with the authority to tax, "levy" "denotes exercise of legislative function, whether state or local, determining that a tax shall be imposed and fixing [the] amount, purpose and subject of the exaction." *Black's Law Dictionary* 907 (6th ed. 1990). *State v. County Com'n of Johnson County*, 918 S.W.2d 252, 256 (Mo. banc 1996).

In *Roberts v. McNary*, 636 S.W.2d 332 (Mo. banc 1982), the supreme court adopted the following definition of "tax," as used in the Hancock Amendment, and distinguished it from other charges:

> "The term 'tax' has been defined variously, but the appropriate definition for us is found in *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 875 (Mo. banc 1960) in which we stated: 'Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs." Taxes are not payments for a special privilege or a special service rendered * * * Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes * * * unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures * * * rather than compensation of public officers for particular services rendered * * *.'"

*Id.* at 336, quoting *Craig v. City of Macon*, 543 S.W.2d 772, 774 (Mo. banc 1976). The supreme court has subsequently held:

*Leggett* teaches, and *Roberts* agrees, that an exaction demanded by the government for a special privilege or for specific purposes and not intended to be paid into the general fund to defray general public needs or governmental expenditures is not a tax.

*Tax Increment Fin. Com'n,* 781 S.W.2d at 77.

■ The words "license" and "fees" are used in this section of the Hancock Amendment to prevent political subdivisions from circumventing the Hancock Amendment by labeling a tax increase as a license or fee. *Keller,* 820 S.W.2d at 305. Increases in licenses and fees are prohibited, if, under the factors set out in *Keller,* the license or fee operates as a tax. *Id.* at 304–05.

■ Bridgeton's merchant license tax ordinances are the subject of Schunk's complaint. This is a tax for the privilege of doing business in Bridgeton.

The subject matter of a business or occupation tax, however, is not the sale, even though sales of the character specified are utilized as a measure of the tax to be assessed, and are essential to a determination that a person is engaged in a taxable occupation. It is not a privilege tax on purchasers, or a tax on the property or income. It is on the privilege or occupation, that is, on the person for the privilege of engaging in the business or occupation designated . . .

*Kansas City v. Graybar Electric Company, Inc.,* 485 S.W.2d 38, 41 (Mo. banc 1972), quoting 53 C.J.S. *Licenses* Section 30, p. 573 (1948). Thus, "[g]ross receipts are merely a means to calculate the occupational license tax; what is being taxed is the privilege of doing business in [the municipality]." *Id.*

With these principles in mind, we turn to Schunk's specific arguments.

## A. Inclusion of Lease Revenues in Gross Receipts

Schunk first argues that Ordinance 81–67 increased its tax liability in violation of the Hancock Amendment by expanding the gross receipts on which the tax is measured from revenue received from the "sale of goods" as found in Ordinance 747, Section 2, to revenue received from the sale of goods and rendition of services. It concludes, without citation to any authority, that this change added revenue from automobile leases to gross receipts. It argues that leases are "services" and not "sales" because title is not transferred.

■ The underlying premise of this argument, that revenue from automobile leases was added by Ordinance 81–67, is not supported by any authority or the record. In construing an ordinance we look at the entire ordinance. *City of Webster Groves v. Erickson,* 763 S.W.2d 278, 279 (Mo.App.1988) *cert. denied* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989). Ordinance 747, Section 2, defined "sales," used with respect to gross receipts, as all consideration received for "the *sale* of goods, or wares, merchandise and other products and commodities." (emphasis added). Section 3 of that ordinance defined "sale" as "any transfer, exchange or barter of tangible personal property for a consideration of money, property or service, or any combination thereof, and including the rendering of any service in the Town in connection with such activities." By merely averring that its leases did not involve a transfer of title, Schunk has not shown that its automobile leases did not fit within this definition of "sale." Further, this definition of "sale" was readopted without substantive change in Ordinance 81–67. Thus, if Schunk's leases were included in the definition of "sale" under Ordinance 81–67, they were also included under Ordinance 747.

Schunk's argument fails to raise any issue, much less a claim that Ordinance 81–67 increased a tax levy in violation of Section 22(a) of the Hancock Amendment.

## B. *Estimated Tax Payments*

Schunk next argues that Ordinance 81–67 changed the manner in which merchants calculate and pay their estimated merchant license tax at the beginning of each year. Schunk contends that the estimated merchant license tax under Ordinance 747 was calculated on "all sales made ... during the last preceding calendar year and other factors," whereas Ordinance 81–67 required that the merchant license tax be calculated on only the actual gross receipts for the prior year. Schunk reasons that, by eliminating "other factors" from the calculation of estimated tax, the merchant was required to estimate the tax solely on the merchant's past year's sales and thus any "merchant who anticipated a down swing in his business in an upcoming year would be forced to pay more under Ordinance No. 81–67 then [sic] what he could have paid under the pre-Hancock ordinance." Schunk does not support its conclusion that "other factors" allowed a merchant to base its estimated tax on an "anticipated downswing" with any evidence or authority.

Further, it does not matter whether the ordinance changed one of the criteria for calculating estimated tax payments because this argument does not provide any rationale for invoking the Hancock Amendment. The establishment of criteria for calculating estimated tax payments is not an action that constitutes a levy of tax.

## C. *Interest and Penalties*

Schunk next argues that Ordinance 81–67 violated the Hancock Amendment because it added a provision requiring a merchant to pay interest on unpaid taxes and it modified previous penalty provisions. Schunk contends that the new interest and penalty provisions could "result in a merchant paying more than what he would have paid under the pre-Hancock ordinance." Whether a delinquent merchant would have to pay more in interest and penalties is immaterial because interest and penalties are not taxes and any increase in interest or penalties is not an increase in a tax levy.

"Interest" is the measure of damages for failure to pay money when payment is due even though the obligor refuses payment because the obligor questions legal liability for all or portions of the claim. *Denton Const. Co. v. Missouri State Highway Com'n*, 454 S.W.2d 44, 59 (Mo.1970) (quoting from *Schmidt v. Morival Farms*, 240 S.W.2d 952, 961 (Mo. 1951)). "A 'penalty' is a sum of money made recoverable ... by the state ... for the less serious offenses not mala in se. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1668 (1976)." *Garland v. Dir. of Revenue*, 961 S.W.2d 824, 827 (Mo. banc 1998). Interest and penalties are not taxes. *State ex rel. Crutcher v. Koeln*, 332 Mo. 1229, 61 S.W.2d 750, 753 (1933). Because interest and penalties are not taxes, any new interest charges or increased penalties for tax delinquencies added by Ordinance 81–67 do not constitute an increase in a tax levy. The adoption of interest and penalty provisions into the Code by Ordinance 81–67 did not violate Section 22(a) of the Hancock Amendment.

## D. *Exemption from Gross Receipts*

Schunk last argues that the addition of the word "and" between the factors constituting an out-of-state sales exemption to "gross receipts" violated the Hancock Amendment because the addition eliminated an exemption to which Schunk was previously entitled, thus increasing its tax liability. In response, Bridgeton argues that Ordinance 81–67 required the existence of all three factors for a sale to be exempt from the business license tax as an out-of-state sale and therefore the addition of the word "and" by Ordinance 84–69 did not change this exemption.

Article II, Section 14–15(b) of Ordinance 81–67 defined "gross receipts," upon which the merchant license tax is measured, as revenue received from sales made or ser-

vices rendered "in whole or in part" in the State of Missouri. It further provided: "Gross receipts shall not include the receipts from sales which (1) are made to non-residents of the State of Missouri, (2) are made by sales personnel not working from the State of Missouri, (3) are filled by delivery outside the State of Missouri." Ordinance 84–69 added the conjunction "and" between these criteria. Schunk argues that this addition means that it now has to satisfy all three factors in order to exempt revenue as out-of-state sales, whereas previously it only had to satisfy one factor.

■ In construing an ordinance we attempt to give effect to the lawmakers' intent; we consider the entire act and its purposes and seek to avoid unjust, absurd, unreasonable, confiscatory or oppressive results. *City of Webster Groves,* 763 S.W.2d at 279. By considering the entire definition, we find the lawmakers' intent, as expressed in the first sentence of the definition, was to include revenues from sales made in whole or in part in the State of Missouri. The last part of the definition defines sales that are not included in gross receipts. It lists three criteria which are separated by commas, but not by a conjunction.

Schunk urges that these should be read as alternatives. Such an interpretation, however, would defeat the legislative intent to include revenues from sales made "in whole" or "in part" in Missouri. It would also lead to an unreasonable result because it would allow a Bridgeton merchant to exempt from the measure of taxation gross receipts based on sales which were in fact made "in whole" or "in part" in this state. On the other hand, if the three clauses are interpreted to be required components of one exemption, the exemption is consistent with the expressed legislative intent.

By adding the word "and" when it amended this provision, Bridgeton did no more than clarify the previous ordinance. The addition of the word "and" between the phrases did not "increase" anything, much less increase a tax levy in violation of the Hancock Amendment.

The trial court did not err in finding that the enactment of these ordinances did not violate the Hancock Amendment. Point one is denied.

## II. *Claim of Genuine Issue of Material Fact*

■ For its second point Schunk asserts that the trial court erred in granting Bridgeton's motion for summary judgment because there was a genuine issue of material fact. Schunk argues that Bridgeton included certain repair service revenues in its calculations of Schunk's gross receipts, in violation of Section 610.040 of the Code, which provides, "if a merchant operates a repair service for which it keeps separate books and records of gross receipts . . . then the gross receipts from such repair service shall be excluded in computing the merchant's tax for such merchant." Schunk contends that whether Bridgeton improperly included certain repair services in Schunk's "gross receipts" figure is a disputed issue of fact. We disagree. Bridgeton made a prima facie case that it accurately calculated Schunk's gross receipts in computing Schunk's merchant tax liability and did not include repair service revenues. Schunk's conclusory response to the motion did not create a disputed issue of fact on this issue.

In its motion for summary judgment, Bridgeton set out the requirements of, and attached to an affidavit, that part of the Code governing its merchant license tax. It specified the amounts for each of the years 1994 through 1998 that Schunk reported and paid as its merchant license tax, Schunk's gross sales, its credits, its gross receipts as defined in the Code, its tax liability based on the rate set forth in the Code, and its tax deficiency. It referred to specific paragraphs of the affidavit of Carol Stalhut, Bridgeton City Clerk, to support the amounts Schunk paid and

reported, and to specific paragraphs of the affidavit of Dennis Rainey, Financial Officer for the City of Bridgeton, to support each of the figures and calculations comprising gross sales, credits, gross receipts, tax liability and tax deficiency.

In his affidavit Rainey averred that his duties as Finance Officer included general accounting functions. He attested that he reviewed documents generated by Schunk which included, but were not limited to, "Schunk's balance sheets and associated departmental gross profits analysis for years 1994, 1995, 1996, 1997, and 1998," copies of which were attached to his affidavit as Exhibits 1–5. Exhibits 1–5 are thirty-two pages of Schunk's financial statements, including its income and expense statements and balance sheets for the years 1994 through 1998. Rainey also reviewed Schunk's merchant license applications which were attached to the Stalhut affidavit as Exhibits 2–7. Rainey further averred that he calculated "gross receipts" according to Chapter 610 of the Code.

In its summary judgment response, Schunk admitted that it had gross sales in the amounts stated by Bridgeton, but it denied each of the annual gross receipts figures for the reason that: "This number calculated by the City of Bridgeton does not take into account exclusions that are authorized by the Code for ... receipts from repair service." It cited Don Schunk's affidavit, paragraph 3, in support of its response. In paragraph 3 of his affidavit, Don Schunk averred:

3. In the years 1994 through 1999 Schunk sold vehicles on which Schunk had installed accessories and performed repair services. The cost of the installation of those accessories and repair services are included in the amounts the City of Bridgeton has set forth in paragraphs 10, 16, 22, 28, 34 and 39 of its Motion for Summary Judgement.

Don Schunk did not specify the amount of the services he claims were erroneously included in the gross receipts or reference any documents which would show the existence or amount of these costs or would establish that these costs were erroneously included in gross receipts.

Bridgeton filed a reply, supported by Rainey's supplemental affidavit, in which Rainey specified that he had excluded the cost of these services from his calculations. Rainey averred:

4. Schunk's gross sales totals for the years 1994, 1995, 1996, 1997 and 1998, set forth in my prior affidavit in this matter, were calculated by adding total of the used vehicle sales to total new vehicle sales, less service contracts. Parts and service sales totals, as well as body and paint sales totals, were not included in the gross sales totals.

5. Schunk's gross receipts for the years 1994, 1995, 1996, 1997 and 1998, set forth in my prior affidavit in this matter were calculated by adding total of the used vehicle sales to total new vehicle sales, less service contracts and trade-ins. Parts and services sales totals, as well as body and paint sales totals, were not included in the gross receipts totals.

The criteria on appeal for testing the propriety of summary judgment are no different from those which the trial court employs initially to determine the propriety of sustaining the motion. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Because the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment. *Id.* Our review is therefore de novo. *Id.*

A movant is entitled to summary judgment if the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). We view the record in the light most favorable to the party against whom summary judgment is en-

tered and accord the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Fin.*, 854 S.W.2d at 376. We take as true the facts set forth by affidavit or otherwise in support of the moving party's motion unless they are contradicted by the nonmoving party's response to the summary judgment motion. *Id.; Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 938 (Mo.App. 1996). The non-moving party's response must show the existence of some genuine dispute as to one of the material facts necessary to the plaintiff's right to recover. *ITT Commercial Fin.*, 854 S.W.2d at 381.

Bridgeton made a prima facie case of underpayment of the merchant license tax because it set out the numbers it used to calculate the tax, supported the use of the numbers and the compliance with the Code with the affidavit of its financial officer, and supported the affidavit with Schunk's own financial documents which contained the underlying figures on which the calculations were based.

■■■ Once the movant has met the burden imposed by Rule 74.04(c) for establishing a prima facie case for summary judgment, the burden then shifts to the non-movant to show that the movant was not entitled to summary judgment as a matter of law. *Id.* If the burden shifts, the non-movant must then "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed," or that, under the undisputed facts, the movant was not entitled to judgment as a matter of law. *Id.* at 381. Rule 74.04(c)(2) requires:

> The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs, shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits.

Rule 74.04(c)(2). A response is required to set forth the *specific facts* showing that there is a genuine issue for trial. Rule 74.04(e).

Schunk failed to file a response which showed a genuine issue of disputed fact as required by Rule 74.04. Schunk did not identify the amounts it contended were erroneously included or any documents evidencing those amounts. It did not make any reference to the record where any facts appear which would show that certain costs were erroneously included in gross receipts. Under these circumstances, we take the factual assertions contained in the motion as true. *Peck v. Alliance General Ins. Co.*, 998 S.W.2d 71, 75 (Mo.App.1999). Accordingly, the trial court did not err in finding no genuine dispute of fact.

The judgment of the trial court is affirmed.

MARY K. HOFF, C.J., and ROBERT E. CRIST, Sr. J., concur.